OWEN CECIL
vs.      } March Term, 1848.
MARY ANN DORSEY ET AL.

[PARTITION—RETURN OF COMMISSIONERS—PRACTICE.]

An objection to a return made upon a commissioner for partition, that the commissioners did not distribute the estate by lot, but at their own discretion, assigned the several shares to the parties interested, cannot be sustained, either by the practice of the court, the act of Assembly, or the rule of the English Court of Chancery in similar cases.

When partition is made by agreement of parties, one of the modes known to the common law is, by drawing lots; but, there is no authority for saying, that when a compulsory partition is made by judicial process, recourse must be had to lots to determine the portion which each party is to take.

The legislature did not mean to confine the commissioners to a particular mode of making the partition ; they may, if they please, award to each of the parties his share of the thing to be divided, or they may, at the proper stage of the proceedings, draw lots ; and their return, otherwise unexceptionable, will not be set aside because they have adopted either of these modes.

It is a fatal objection to a return, that the value of the estate, in money, has not been stated by the commissioners.

The clause directing the commissioners to take evidence should be added to the form of the commission.

The act of Assembly requiring thirty days notice of the execution of the commission to be given, is not complied with by stating in the return, that *reasonable notice* was given ; but the commissioners must say in their return, either that they gave at least thirty days notice, or due notice, according to law.

---

[A partition having been decreed between the parties to this cause, (other than Mary Ann Dorsey,) a commission was issued for that purpose, and return made thereon, to which latter various objections have been raised, and their merits argued before the Chancellor.

The most prominent objections taken, were :

The assignment of the shares to the several parties interested, by the commissioners themselves, *without ballot.*

The omission on the part of the commissioners to ascertain and return the value of the whole estate to be divided, and that of the several parts as laid off by them, or its value, subject to the incumbrance of the widow's dower.

And the want of due notice to the complainant of the execution of the commission.

In considering the first of these, the Chancellor says :]

---

THE CHANCELLOR :

This objection, it seems to me, cannot be sustained, whether we regard the practice of the court, the act of assembly, or the rule of the English Court of Chancery in similar cases.

To whatever source we are to trace the jurisdiction of the Chancery Court of England in cases of partition, and that there is some obscurity in regard to it is very manifest, it never seems to have been the duty of the agents employed by the court for the purpose, to distribute the estate to be divided, by lot. On the contrary, the general practice has been for the commissioners themselves to assign to each of the parties his share of the estate. *Allnutt on Partition,* 88, 89.

This not only appears from the observations of the authors, but from the form of the commission, and the return of the commissioners to the Chancellor, as is shown by the precedents at pages 210, 211, 212, of the same book.

It is true, that when partition is made by agreement of parties, one of the modes known to the common law is, by drawing lots, and the course of proceeding in such cases, is pointed out in *Coke Littleton*, 167, *a*. This is when the parties agree that partition shall be made, but do not agree as to the division of the separated parts, which each shall take; but I do not find any authority for saying, that when a compulsory partition is made by judicial proceedings, recourse must be had to lots, or ballots, to determine the portion which each is to take; on the contrary, it appears to be very clear, that the officers employed by the law for this purpose, are clothed with full authority to make partition among the parties, in the exercise of a sound discretion.

Upon the common law writ *de partitione facienda*, the sheriff, by the oath of a jury, makes partition, and assigns to each party his share of the estate. *Coke*, 168, *b*. *Allnutt on Partition*, 70, 71.

And the inquisition of the partition thus made, is returned by the sheriff under his seal, and the seals of the jurors, which, when confirmed by the court, is final; the judgment under which the writ issued being only interlocutory. *Allnutt*, 173.

In truth, the proceedings at common law under the writ of partition, and the proceedings by bill in equity in this state, have a near resemblance, the only material difference being, the substitution of commissioners for the jury of view, according to the course of the common law.

———

[The Chancellor after referring to the case of Corse vs. Polk, wherein a similar objection was disallowed by the then Chancellor, (Kilty,) proceeds:]

———

Cases have been laid before me, in which the commissioners appointed by this court, have made partition by lot, but in these same cases, they have also made the assignment of other parcels of the estate, in the exercise of their own discretion; the case of Dorsey vs. Dorsey decided in 1829, is one of this description.

In *Jones* vs. *Tottey*, 2 *Cond. Ch. Rep.*, 69, partition among
tenants in common, was made by lot, but appears to have pro-
ceeded from the act of the parties, and not because the com-
missioners supposed themselves restricted to that mode. In
the subsequent case of *Manners* vs. *Charlesworth*, 8 *Cond. Ch.
Rep.*, 376, the commissioners themselves awarded to each party
his share of the estate, and though their proceedings were most
narrowly scrutinized, no objection on this account appears to
have been urged.

————

[After referring to a recent case in the Court of Appeals, in
which it was decided, that the proceedings in this court for a
partition, must as far as practicable conform to the act to direct
descents, of 1820, ch. 191, and commenting upon the true con-
struction of that portion of the act relating to the distribution
of the shares ; the Chancellor continues :]

————

Upon the whole, my opinion is, that the legislature did not
mean to confine the commissioners to a particular mode of mak-
ing the partition ; they may, if they please, award to each of the
parties his share of the thing to be divided, or if they choose,
they may, at the proper stage of the proceedings, draw lots ;
and that their return, if otherwise unexceptionable, will not be
set aside, because of the adoption by them of either of those
modes.

————

[To the objection, that the value of the estate in money had
not been stated in the return of the commissioners ; the Chan-
cellor after citing portions of the 8th, 10th and 12th sections
of the act of 1820, chap. 191, requiring the same to be ascer-
tained by them, and a return to be made of all their proceed-
ings to the court, for ratification or rejection ; and deciding,
that a statement of the value thereof, signed by three of them,
which was sometime afterwards filed, but neither referring to,
or in any way incorporated with their return, could not be con-
sidered part of the same, continues :]

It seems to me, to be quite apparent, that the revising power of this court, cannot be wisely exercised, and the return ratified or rejected as justice shall dictate, unless the value of the whole estate, and the value of the several parts, as ascertained by the commissioners, is reported.   The great object to be attained, is a partition among the parties interested, fairly and equally in value, according to their several just proportions, and I cannot understand how the court can see that this is done, if the commissioners, may, or may not, show by their return, the value they have put upon the entire estate, and of each part thereof.   The commission in this case, did'not direct the commissioners to take evidence, and in that respect, as is usual, conforming to the interlocutory decree, but my opinion is, that the clause added to the form of commissions by the late Chancellor, and to be found in the Maryland Chancery Practice, 323, should be always added.   With regard to the power which it gives, to take the depositions of witnesses, it will be found to agree with the English precedents. *Allnutt on Partition*, 212 ; *Manners* vs. *Charlesworth*, 8 *Eng. Cond. Ch. Rep.*, 377.

I cannot bring myself to think, that the legislature intended to refer so important a matter, as the value of the estate, exclusively to the judgment of the commissioners.   They are to ascertain its value, and if incumbered, then its value subject to the incumbrance, and to do this, it is indispensable they should have authority to examine witnesses, and the depositions of these witnesses, as a part of their proceedings, are to be returned to the court, that an enlightened judgment may be formed upon the question of ratification or rejection.

The court, it is true, reposes great confidence in the judgment of the commissioners, who, according to Lord Brougham, are viewed in the capacity of witnesses, as well as arbitrators, but, to enable them to discharge their important and delicate functions, satisfactorily and safely, they should be clothed with the supplementary power of calling for the testimony of others, and then, that the court may see, that the conclusion to which they come upon their own personal observation, and upon the testi-

mony of others, is in accordance with the justice of the case, these depositions are to be returned with their proceedings, to the source from whence they derive their authority.

[The Chancellor then proceeds to the consideration of the objection made to the return of the commissioners, for want of due notice, of the execution of the commission. After referring to the 14th and 51st sections of the act of 1820, chapter 191, the one requiring thirty days notice of the execution of the commission to be given, and the other declaring a statement in the proceedings, that due notice was given according to law, to be *prima facie* evidence of the same, and noting the fact of its having been stated in the return, that *reasonable notice* only was given, he continues :]

I do not think this a compliance with the act of assembly, nor do I think there is any thing in the proceedings, or proof, which can break the force of this objection. The notice required by the act of assembly, and the notice, which may, in the judgment of the commissioners, be reasonable, are very different things. They must say, either that they gave at least thirty days notice, or due notice according to law, (which is the same thing substantially,) or to that effect, or their proceedings do not conform to the law. To say that the statement, that reasonable notice was given, is sufficient, would be to refer to the opinion of commissioners in each particular case, the reasonableness of the notice. It will readily be seen, how variable a practice this would introduce ; the extent of the notice in each case, depending upon the discretion of the commissioners, instead of the direction of the law.

[No appeal was taken in this case.]