(Decided March 26th, 1896.)

---

## ABRAM CLAUDE *vs.* ANNA D. HANDY.

*Partition of Land—Oath of Commissioners—Sale of Part of the Land Before Partition—Validity of Award of the Commissioners—Value of the Parcels—Multifariousness—Mistake.*

A bill asking for a partition of the land of which the parties are seized as tenants in common, or for its sale if not susceptible of partition and the division of the proceeds, after payment of a mortgage debt upon part of the same, is not multifarious.

Where a commission to make partition of land is issued to several persons, one or two of them may, if authorized by the commission, administer the oath to the others, but the better practice would be for the commission to require the oath to be administered by an officer authorized by law to administer oaths.

When under a bill for partition it is agreed by the parties that one parcel of the land involved, which is subject to a mortgage, shall be sold, it cannot afterwards be objected that all of the real estate owned in common by the parties as heirs at law of a certain person is not included in the decree and award.

If two tenants in common by agreement sell part of a tract of land, one of them may afterwards require a partition of the remainder if susceptible of it ; and the same rule applies to separate properties.

In an equitable partition it is not only the right but the duty of the commissioners to allot to one party such part of the property as may be more advantageous to him on account of its proximity to his other property, if it can be done without injury to the other party ; and if the properties be in several parcels the owners are not entitled to a share of each parcel, but only to an equal share in the whole.

Where in a partition suit the parties interested name the commission-ers, whose duty it was to examine the properties, place just valua-tions on them, and allot them fairly and equally, the Court will not set aside their award unless there be clear evidence of error on their part by which one of the parties has been wronged, although the Court may be of opinion that it might have found differently as to some of the values.

To justify the Court in setting aside a partition of real estate on the ground of mistaken judgment on the part of the commissioners, the mistake must be a serious one, and the evidence of it too plain to be mistaken.   If the evidence be doubtful or contradictory the re-port will be sustained.

Appeal from a decree of the Circuit Court for Anne Arundel County (ROBERTS, C. J.), by which exceptions to the return of the commissioners to make partition of real estate between tenants in common was overruled and the return ratified and the parcels allotted in accordance there-with.   The facts are set forth in the opinion of the Court.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD and RUSSUM, JJ.

*Daniel R. Magruder* (with whom were *Dennis Claude* and *Robert Moss* on the brief), for the appellant.

It will be noted that the bill, as originally framed, asked only for the partition of the real estate of which Elizabeth C. Harwood died, seized and possessed.   The amendment asked for and granted, made the revised paragraph (setting out the property to be divided), read as follows : " The real estate mentioned and described in the exhibits filed in this case," and as part of the real estate mentioned and described in these exhibits, was real estate of which Dr. Dennis Claude died, seized and possessed, a new class of property was sought to be brought in for partition; and yet the plaintiff's

petition, asking for this amendment, speaks of this proposed amendment as merely " desirable for the sake of clearness of expression "—" *clearness of expression,*" being, we submit, an original mode of designation for an amendment seeking to introduce into the scope of the bill, and for the Court to deal with an entirely different class of property from that which the bill specifically asked to have divided. It will be noted that although this amendment was authorized to be made by the order of the Court, yet the amendment, though so desirable, was never made, and the " clearness of expression " was thus ruthlessly sacrificed in favor of a more rugged phraseology.

Now this proposed amendment, whether made or not, still, while coupled with the original language of the bill, still leaves the bill one seeking the partition of the real estate whereof Elizabeth C. Harwood died, seized and possessed, *and of that alone ;* whereas the partition as actually made, also undertook to bring into the division real estate of which Dr. Dennis Claude died, seized and possessed, as disclosed by the exhibits, or the exhibits are assumed to disclose. Now, as the only exhibit filed with the bill (or that were filed in the cause at all up to the time of asking and granting leave to amend the bill), was the will of D. Claude Handy, the amendment to the bill can in no sense make it a bill for partition of any real estate whatever other than that whereof Elizabeth C. Harwood died, seized and possessed. The other exhibits in the case had been filed with the examiner, but were not filed in the cause, or made a part of the record until after the amendment as asked and granted. So that as the partition as made includes property not asked by the bill to be divided—the whole partition becomes ineffective and must be declared null and void.

The bill is multifarious in that it joins a prayer for partition with one for the sale of real estate under a mortgage. This has been clearly settled. *Belt* v. *Bowie,* 65 Md. 350. The fact that the mortgagee is made a defendant instead of a plaintiff, does not alter the principle—two separate and

distinct matters are joined, which are the proper subjects
for separate and distinct bills of complaint—and the defend-
ant mortgagee has no proper place or standing in a bill for
partition as to which he is an entire stranger in interest—
and the proceeding is the more objectionable, as instead of
seeking a partition of the whole of the real estate of the in-
testate as the law contemplates, it deliberately segregates
and removes a partition of the real estate from the jurisdic-
tion of the Court (primarily invoked for partition), and an
excrescense having no legitimate place there, is awkwardly
attempted to be engrafted thereon—lugging in parties who
have no proper place in such a controversy.

The bill, as we have seen (even as amended—if it is to be
so considered), is for the partition only of the real estate
whereof Elizabeth C. Harwood died, seized and possessed.
The *proof* shows, not that the property so left can be di-
vided, but that this property, *together with that left by the
father of the defendant*, can be divided.   This defect is fatal
to the relief prayed.   " Chancery decrees *secundum allegata
et probata* and hence a plaintiff must allege in his bill what
he expects to prove."   *Small* v. *Owings*, 1 Md. Ch. Dec.
363 ; *Hayward* v. *Carroll*, 4 H. & J. 118.

In the testimony of the defendant, Abram Claude, in
answer to the 4th Q.: " Enumerate that property and state,
as far as you can, how her title to it was derived," the wit-
ness, after enumerating the property left by Mrs. Harwood,
goes on to say, " and in addition to these, she had in town
a one-third interest in my father's undivided property, con-
sisting of what is ordinarily called the " Seven Buildings,"
on South street, and an unimproved lot on College avenue,
near the College green."   And yet this property is all
brought into the partition just as if Mrs. Harwood had
owned the whole, and as if the plaintiff and defendant each
owned only an undivided half part thereof—*and this unim-
proved lot on College avenue* (in which Mrs. Harwood was
entitled to only an undivided third part) is the only part of
the property allotted to the defendant, although *it is* the

only part of the property which has yielded no revenue whatever, while the plaintiff gets all the rest, and as a most remarkable result, the shares are found to be exactly equal —even to one dollar—the valuations being exactly fitted to bring about this result—like forcing a balance, as it were.

The partition is unjust and unequal, because even assuming for the sake of the argument that the shares are of equal pecuniary value (which is far from being the case, as the evidence shows), yet this matter of market value is not the only item to be considered in making partition. The commissioner's return and the decree carrying the same into effect, give to the plaintiff all the productive property, yielding an income, and give to the defendant only the unimproved property on College avenue which yields no revenue, and is besides unsaleable owing to its proximity to the gas and electric light works.

" Equality is equity ! " Inequality of the partition in this case—therefore, not equitable, and therefore, not just or worthy to be sustained by a Court of Equity. The law, the commission, the principles of an enlightened, the established practice both at law and in equity, demand, prescribe, and direct that the partition to be regular must be equal.

Now "equal" in this connection and the sense of the word when so supplied means not only equality in supposed present (much less prospective or anticipatory) value ; but more than that, and far above that, equality in everything that constitutes the incidents of the enjoyment of the torment (so to speak) of land—for there is such a thing as being as a well-known phrase (which has grown into a proverb) aptly calls " *land poor.*" And so the authorities are to this effect ; a few citations only being to illustrate and if possible a proposition, the mere statement of which seems to make the point perfectly clear—if it were possible, even clearer. See *Allnutt on Partition,* 5 Law Lib. 9. In 2 *Roll's Abridgement,* 256, the law is stated as follows : " (F) What " Equality " means.   1. Even altho' the partition be equal in the mere value of the land, nevertheless, unless it be also

of equal present enjoyment to the one as to the other, this is not equality. 2. So if one share be encumbered with an assise (or law suit), and the other not, this is not equality. 3. Likewise if one part is easy of access to the one, and the other part of difficult access to the other, this is not equality, notwithstanding the land be of equal value."

To the like effect is 2 *Bacon's Abr.* " *Coparceners* " (*C.*) " *of Partition,*" 363. See also *Alex. Br. Stat.* (31 Hen. 8, Cap. 1 Partition) 311-317, and the extensive notes and citations. *Mayer's Digest* (*Chancery*), 313, &c.; *Id.* (*Inheritance —Division*), 475, &c.; *Mitchell* v. *Seipel,* 53 Md. 271.

*James M. Munroe,* for the appellee.

The average of the various estimates on the College avenue lots is $5,618, and the valuation of said lots by the commissioners is $6,471. The average valuation of the Gloucester street house, according to the testimony of all the witnesses, is $3,933. The average valuation of the Gloucester street house, according to the testimony of the exceptants' witnesses, is $4,100; and the valuation placed thereon by the commissioners is $3,500. There seems to be a concensus of opinion that the South street property (" The Seven Buildings ") is worth about $1,500, and the outside valuation placed upon the " Town Hill Farm " by any of the witnesses is $500; so that the total average valuation of the property awarded to Mrs. Handy is $5,933, being about $500 less than the valuation placed thereon by the commissioners; and the average valuation of the property awarded to Dr. Claude is $5,618, being about $850 less than the valuation thereof by the commissioners. The decided weight of the whole testimony on behalf of the exceptants and appellee is rather to confirm than to contradict the correctness of the estimate placed upon the property by the commissioners. There is no allegation nor is there any testimony as to any misconduct on the part of the commissioners, or any of them, in the discharge of their duties.

1. Where one tenant in common, supposing himself to be legally entitled to the whole premises, has erected valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements.  1 *Story's Eq.* (3rd ed.), sec. 655.  2. Courts of Equity will not only take care that the parties have an equal share and just compensation ; but they will assign to the parties, respectively, such parts of the estate as would best accommodate them and be of the most value to them with reference to their respective situations in relation to the property before the partition.  1 *Story's Eq.* (3rd ed.), sec. 656 ; *Storey* v. *Johnson*, 1 Young & Coll., 538 ; *S. C.*, 2 Young & Coll., 586.  3. It will, therefore, by its decree adjust all the equitable rights of the parties interested in the estate ; and will, if necessary for this purpose, give special instructions to the commissioners, and nominate the commissioners instead of allowing them to be nominated by the parties.  *Ib.*, sec. 656 *b*.  4. Where there are divers parcels of land, messuages and houses, partition need not be made of each estate separately so as to give each party his moiety or other portion in every estate.  But the whole of one estate may be allotted to one, and the whole of another estate to the other, provided that his equal share is allotted to each.  1 *Story's Eq.* (3rd ed.), sec. 657 ; *Earl of Clarendon* v. *Hornby*, 1 P. Will. 446–7.  5. The commissioners act as judges, the whole power of the Court being committed to them.  2 *Danl. Ch. Prc.*, p. 1155.  6. The Court will not disturb their return upon the mere allegation of conflicting opinions by different surveyors, with respect to the comparative value of the several lots.  2 *Danl. Ch. Prc.*, p. 1156, n. 1 ; *Re Thompson*, 2 Green Ch. 637 ; *Hay* v. *Estell*, 19 N. J. Eq. 133 ; (4 C. E. Green); *Wilhelm* v. *Wilhelm*, 4 Md. Ch. 330.  7. Every part of estate not to be divided ; sufficient if each party receives his proper share of the whole.  2 *Danl. Ch. Prc.*, p. 1157.  8. Duty of commissioners to assign the shares of those parties to whom they would be of

most value (independently of market value) with reference to their respective situations in relation to the value of the property before the partition took place.    2 *Danl. Ch. Prc.*, p. 1159, 1 N. 3; *Storey* v. *Johnson*, 1 Young & Coll. 538–546.    9. Grounds of exception to ratification of commissioners' return.    (*a.*) Misconduct of commissioners.    (*b.*) Irregularity in executing comms.    (*c.*) Perhaps also inequality.    *Alex. Ch. Prac.*, p. 166.

BOYD, J., delivered the opinion of the Court.

The bill was filed in this case by the appellee against the appellant and the executors of L. T. H. Irving, alleging that Elizabeth C. Harwood died, intestate, in February, 1886, seized and possessed of certain real estate in Anne Arundel County, leaving the appellant and D. Claude Handy her only heirs at law, each of whom became thereby seized and possessed of one undivided moiety of the said real estate. It further alleged that D. Claude Handy died in May, 1889, leaving a last will and testament, by which he devised all his interest in it to the appellee and charges that said real estate was susceptible of partition; that a portion of it was encumbered by an overdue mortgage debt of four thousand dollars to L. T. H. Irving, who departed this life in 1892, and that William H. Dashiell and Florence Irving were his executors.

The appellant filed an answer, in which he admitted most of the material allegations in the bill, but denied that the property was susceptible of partition, and by way of cross-bill, alleged that the farm called " Willow Glen " would have to be sold forthwith to pay the mortgage debt thereon, and that " the property remaining after said sale of said farm is susceptible of no practicable division that would not work injustice to one or the other or both the joint owners thereof," and then prayed the Court to pass a decree ordering the sale of the whole real estate involved in the suit and a division of the proceeds.    Soon after the answer was filed the appellant and appellee filed a petition stating that in any event it

would be necessary to sell the "Willow Glen" farm, which was encumbered by the mortgage above referred to ; that the executors of L. T. H. Irving had filed their answer asking that it be sold and consenting to a passage of a decree therefor, and prayed that the sale of that farm be ordered by the Court without further delay. The same day, June 17, 1893, a decree was passed appointing the solicitors for the respective parties, trustees to make said sale.

Testimony was commenced in the early part of December, 1893, by the examination of the complainant, who testified as to the heirs of Dr. Dennis Claude, the father of the appellant and grandfather of her husband, from whom part of the property descended, and filed with the examiner various deeds vesting the title in her husband and the appellant. She stated that the property held by them as co-tenants consisted of a farm called "Town Hill," one called "Willow Glen," vacant lots in Annapolis near St. John's College, houses and lots on South street, and one on Gloucester street, Annapolis. Three witnesses produced by her testified that they knew the property and thought it was susceptible of partition. The appellant and Mr. Dennis Claude were of a contrary opinion. On February 7th, 1894, after the testimony was concluded and the day before it was filed, the complainant obtained leave to amend the bill, so that the first paragraph would conclude, "leaving the defendant, Abram Claude, and D. Claude Handy  *  * her only heirs at law, each of whom became thereby seized and possessed of one undivided moiety of *the real estate mentioned and described in the exhibits in this case,*" instead of "leaving the defendant Abram Claude and D. Claude Handy  *  * her only heirs at law, each of whom became thereby seized and possessed of one undivided moiety of *said real estate,*" as it was originally in the bill. On February 15th, 1894, the defendant filed a petition asking the Court to rescind the order authorizing the amendment. On hearing the petition it was dismissed, but leave was granted to the defendant to answer, plead and demur to the amended

bill and to both parties to take further testimony. An answer was filed admitting in substance most of what the former answer had, but alleging that "the real estate mentioned and described in the exhibits filed" is not all the real estate of which the heirs at law of Elizabeth C. Harwood became possessed by her death, but that part of it had been sold, etc. A demurrer was also filed to a portion of the bill but subsequently withdrawn and an agreement made that the question of partition or sale of the property be submitted on the testimony and exhibits already filed.

On May 7th, 1894, a decree was passed directing a partition of the real estate (excepting "Willow Glen" farm, which by agreement had already been decreed to be sold), and the issuance of a commission in the usual form to five persons named. A report signed by all the commissioners was returned to the Court, in which they stated that they, after having taken the oath annexed to the commission and having given notice to the parties of the time and place of meeting, did meet on the land and premises mentioned in the commission, caused the same to be surveyed and divided into two parts as directed, by Louis Green, one of their number, a competent surveyor, and allotted to Mrs. Handy house No. 73 Duke of Gloucester street, at $3,500.00; six houses on South street, at $1,500.00, and the (Town Hill) farm, in the first election district, at $1,471.00, making in all $6,471.00, and to Dr. Abram Claude lots on College avenue and St. John street, at $6,471.00.

The appellant excepted to the report and award of the commissioners for the following reasons: 1st, because the commissioners were not legally sworn in or qualified; 2d, that the decree directed a partition of only a portion of the real estate of which Mrs. Harwood died possessed and claimed by the parties to the suit; 3rd, that the commissioners only partitioned and awarded a portion of such real estate; 4th, that the "Willow Glen" farm was not included in the report and award of the commissioners or in the decree of the Court; 5th, that there was an unpaid debt due

by the estate of Mrs. Harwood and there could be no legal partition until it was paid—that the farm " Willow Glen " was not yet sold and the personalty had been exhausted; and, 6th, that the award and partition are grossly unequal, unjust and unfair.

We have thus stated more at length than was perhaps necessary the proceedings in the case, but as in the argument there seemed to be some misapprehension of the condition of them, so far as disclosed by the record, we deemed it proper to thus refer to them. Before discussing the exceptions to the report and award of the commissioners, we will briefly consider the prior proceedings. It is stated in the brief of the appellant that the amendment to the bill authorized by the order of February 7th, 1894, was never in point of fact made. We do not so understand the record. The first paragraph of the bill, as printed in the record, concludes in the identical language of the amendment as proposed in the petition of the complainant and authorized by the Court. The petition of the defendant (Dr. Claude) to have the order granting leave to amend rescinded, shows that the bill had been amended and he answered and demurred to it. The exhibits mentioned in that paragraph of the bill were filed with the examiner and as above stated it was agreed by the parties that the demurrer be withdrawn and the case submitted to the Court on the question of partition or sale upon the testimony and exhibits already filed. It is doubtful whether there was any necessity to make the amendment, for while Mrs. Harwood owned exclusively part of the real estate, she, the appellant and D. Claude Handy owned as tenants in common the rest of it and by her death the other two became thereby the owners of all the property. From the original bill it could be easily gathered that all the real estate which she owned herself, or as tenant in common with the defendant and Dr. Handy, that had not been sold, was intended to be disposed of, and the original answer and cross-bill of the defendant confirms this view, as they asked to have the whole real

estate involved in the suit sold, and the testimony taken refers to all the property now in controversy. But the amendment allowed was clearly within the power of the Court, and when it was represented to it that the defence and conduct of the case of the defendant would have been different had the bill as amended been originally filed, it very properly · gave leave to the defendant to answer it and take additional testimony, which was not done by reason of the agreement spoken of.

It is also contended that the bill is multifarious in that it joins a prayer for partition with one for sale of the real estate under a mortgage, and *Belt* v. *Bowie*, 65 Md. 350, is relied on to sustain that position. That case is wholly different from this. There the complainants owned the mortgage on the property which had been given by their ancestor, and they sought to have the property sold for the purposes of partition and to foreclose the mortgage. This Court held that the bill was multifarious because it contained two separate and distinct subjects-matter in respect to which relief was prayed—partition and the enforcement of the mortgage. The bill in this case did not seek such relief, but its object was to have the property partitioned, and in the event of its being held to be not susceptible of partition, then to have it sold and the proceeds divided between complainant and defendant, after payment of the mortgage debt. The object of making the executors parties was evidently to bind them by the decree, as was done in *Thruston* v. *Minke*, 32 Md. 571. But as already stated, the only demurrer to the bill was withdrawn by agreement of the parties.

It is also urged that the interlocutory decree directing the partition was not sustained by the proof, as the bill only prayed for the partition of the real estate of which Mrs. Harwood died, seized and possessed. What we have already said sufficiently states our views on that subject.

This brings us to the consideration of the exceptions to the report of the commissioners. The first was not urged in this Court. We find no evidence in the record as to how

the commissioners were sworn, but assuming that they followed the authority given by the commission, which authorized any one or two of them to administer the oath, it was in accordance with what has been the long established practice in this State. *Alexander's Chy. Pr.* 324. It would perhaps be a better practice to require in the commission the oath to be administered to all of the commissioners by a justice of the peace or some other officer authorized by law to administer oaths, as they can now be more conveniently reached than when the other practice was first adopted, but the method followed in this case has been too long sanctioned by the Courts of this State to justify us in setting aside the award on that ground. The second, third and fourth are to the effect that all of the real estate of Mrs. Harwood owned by the appellant and appellee was not included in the decree and award. By agreement and request of the parties the "Willow Glen" farm had, before the decree for partition was passed, been decreed to be sold. After the report of the commissioners was filed, Messrs. Munroe and Claude signed a petition as trustees and as attorneys for the respective parties, stating that the trustees had advertised the farm but had not received an adequate bid ; that the executors of the mortgagee were urgent in their request for payment, taxes and interest were accumulating, and prayed the Court to pass an order directing a peremptory sale, which was done, and the property sold. It was thus by agreement of the parties that it was not included in the partition and they cannot now object to its being omitted from the decree and award. The testimony shows that when Mrs. Harwood died she left other real estate which had been sold by the parties before this proceeding was commenced, but no authority has been produced, and we know of none, that would prevent a partition of the balance of the estate for that reason. It could not be successfully contended that because two tenants in common sold a part of a tract of land by agreement, one could not afterwards require of the other a partition of the remainder,

if it were susceptible of it, and the same rule applies to separate and distinct properties. What we have said also disposes of the fifth exception.

The sixth presents the most important question in the case. The learned solicitors for the appellant very earnestly and ably contended that the partition was unjust and unequal—not only as to the value, but as to the character of the property awarded to the appellee, and that the only property that is now productive is awarded to her. It must be conceded that the Gloucester street property would be more desired by Mrs. Handy than vacant lots, but unless there be some evidence to the contrary, it must be assumed that the commissioners took into consideration all the advantages and disadvantages attending the several parts, valued the same accordingly, and made division and allotment upon the basis of such consideration and valuation, as was said by the Court in *Mitchell* v. *Seipel*, 53 Md. 271, was the duty of commissioners appointed under the act to direct descents. In an equitable partition it is not only the right but the duty of the commissioners to allot to one party such part of the property as may be more advantageous to him on account of its proximity to his other property, if it can be done without injury to the other party, and if the properties be in several parcels the owners are not entitled to a share of each parcel, but only to an equal share in the whole. *Hall* v. *Piddock*, 21 N. J. Eq. 311 ; *Cochrane* v. *Shoenberger*, 33 Fed. Rep. 397 ; *Stannard* v. *Sperry*, 56 Conn. 541. The evidence shows that the Gloucester street house is not only contiguous to but connected with one of the appellee by a communicating door. The South street lot adjoins that and her other property in the rear, as shown by the plat filed with the report. It has no particular value by reason of the improvements on it, and in fact, according to the evidence of some of the witnesses, the whole property would be more valuable without them, as they are, in the opinion of the witnesses, of such character as to permit of very undesirable tenants. If then all the property owned by the

appellant and the appellee is susceptible of partition, as has been established by the evidence and the interlocutory decree, it would seem that under the authorities these properties could properly be awarded to the appellee. We will therefore consider the value of the different parcels as fixed by the commissioners.

It is usual and the opinion of the learned Judge below states that in this case the parties interested named the commissioners. There is no suggestion in the record that there was any misconduct, partiality or prejudice on their part. It was *their* duty and not that of the Judge to view and examine the properties, place just valuations on them and allot them fairly and equally. Their functions are exceedingly important in the administration of justice, and the acts done by them, with the peculiar opportunities they have of reaching proper conclusions, are not permitted by the law to be questioned by conflicting or doubtful testimony. Even if a Court be of the opinion that it might have found differently as to some of the values, it cannot substitute its judgment for theirs, unless sustained by clear and satisfactory evidence of error on their part, which has wronged one or more of the parties whose property they are selected to value and allot. Some Courts regard these reports and awards in the light of verdicts of juries, and will set them aside only upon grounds similar to those upon which a verdict will be set aside and a new trial granted. 17 *Am. and Eng. Enc. of Law,* 777. Some treat them with more respect than verdicts when the commissioners are selected by the parties in interest, with special reference to their qualifications. *Livingston* v. *Clarkson,* 4 Edw. Ch. (N. Y.) 596. " To justify the Court in setting aside a partition of real estate on the ground of a mistaken judgment on the part of the commissioners the mistake must be a serious one and the evidence of it too plain to be mistaken. If the evidence be doubtful or contradictory the report will be sustained \* \* \* \*. Upon no subject do men differ more in opinion than in the value

of real estate." *In re Thompson's Estate*, 3 N. J. Eq. 637 see also *Kane v. Parker*, 4 Wis. 123 ; *Hay* v. *Estell*, 19 N. J. Eq. 133 ; *Lester* v. *Lester*, 3 Y. & C. Ex. 544 ; *Wilhelm* v. *Wilhelm*, 4 Md. Ch. 330.

Applying these well-established principles to this case, what do we find ? The witnesses for the appellant differ widely in their valuations of the several properties. One valued the Gloucester street property at six thousand dollars, three at forty-five hundred, four at four thousand, one at thirty-five hundred, one at three thousand, and another from twenty-five hundred to three thousand, and the witnesses for the appellee fix it at about three thousand. The award of the commissioners at thirty-five hundred cannot therefore be much out of the way. The same witness of the appellant who fixed that property at three thousand dollars named that sum for the South street property, while four of them estimated it at fifteen hundred, and one as low as one thousand dollars. The commissioners valued it at fifteen hundred. The appellant in his testimony, taken before the commissioners were appointed, in answer to the question, "What do you consider a reasonably fair price for the 'Town Hill Farm ?'" said, "I have no idea ; to me it would be worth nothing." One witness said in his testimony taken at that time he thought it would be worth about fifteen hundred dollars. Mr. F. H. Stockett, Sr., said he had known it for overy sixty years and he believed five hundred dollars was its full value under any circumstances. The commissioners named fourteen hundred and seventy-one dollars—thus making $6,471.00 in all awarded to Mrs. Handy.

As to the property awarded to the appellant there was great diversity of opinion. It has a front of ninety feet on College avenue, and five hundred and forty feet and three inches on St. John street. The lots on the avenue have a depth of a little over one hundred and twenty-one feet, as laid off, whilst those facing on St. John street have depths varying from one hundred and thirty-nine to about one hundred and

forty-eight feet. The evidence shows that those facing on St. John street are opposite the Campus and grounds of St. John's College. Two of the appellant's witnesses fix the value of lots fronting on the avenue at ten dollars per front foot, others at fifteen dollars, eighteen dollars, twenty dollars, twenty-five dollars, and one as high as thirty-five dollars per front foot. For those on St. John street they vary from five to sixteen dollars a front foot. Mr. Welch, who was called by the appellant, said he had recorded all the deeds conveying property in Anne Arundel County of late years, had previously been a justice of the peace and insurance agent, and in other ways seemed to have quite an extensive knowledge of the value of real estate, and by his calculation makes this property worth over nine thousand dollars. The estimate of Mr. J. Brewer, another witness of appellant, by the front foot amounts to from six thousand to six thousand four hundred and fifty dollars. The witnesses for the appellee estimate the value of the lots fronting on the avenue from thirty to forty dollars per front foot, and those on St. John street from fifteen dollars upwards, thus making, according to their estimates, the value of this property largely over $6,471.00, the amount fixed by the commissioners. As a rule those who seem to have had most experience as to values of property in Annapolis fix these lots higher than the others. Just how the commissioners reached the amount we are not informed. But if we take twenty-five dollars per front foot for the lots on the avenue (which is ten dollars less than the highest fixed by the appellant's witnesses, and five dollars less than the lowest of those offered by the appellee), and ten dollars per front foot for those on St. John's street (which is six dollars less than the highest of appellant's witnesses and five dollars less than the lowest of the appellee's), it would amount to about $6,450, only twenty-one dollars less than the amount fixed by the commissioners. It will therefore be seen that the awards of the commissioners are not without support from the evidence, and consequently we cannot say there

was no foundation for their estimates. The report was signed by all five of them and stands unimpeached, excepting so far as it is by the opinions of others as to values, no two of whom fully agree. If there be any error of judgment it was made by those appointed at the instance of the parties, and there is nothing in the record that would justify us, under the well established principles of law applicable to such cases, in disturbing the report and award of those thus selected to value and divide the property in controversy. The decree must therefore be affirmed.

*Decree affirmed with costs.*

(Decided March 26th, 1896).