AMELIA BASFORD AND JOHN B. GRAY, GUARDIAN AD
LITEM FOR JESSIE BASFORD AND IDA BASFORD,

*vs.*

JOHN L. CRANFORD, ANNIE GERTRUDE CRAN-
.FORD, WALTER W. CRANFORD.

*Partition of real estate in equity: Code, Article 46, section 34;
appointment of commissioners; merely formal irregulari-
ties in justification; failure to be sworn when first
appointed; "due notice"; effect of—; equiva-
lent to legal notice; commissioners' re-
turn setting aside.*

The fact that commissioners, appointed by a court of equity
to make partition of and divide real estate, failed to be sworn,
as required by law and by their commission, does not vitiate
their return, when it appears that no determination, decision or
conclusion was reached by them, and no part of the duties im-
posed upon them was in fact completed, until each of the com-
missioners had taken the required oath.                    p. 18

The returns of commissioners, appointed under Article 46
of the Code, to make partition of real estate, are not to be set
aside for unsubstantial and merely formal irregularities.

pp. 23-24

"Due notice" means, in the manner prescribed by law.    p. 21

The statement in such a return that the commissioners had given *"due notice,"* is to be construed that they had given the notice required by section 34.　　　　　　　　　　　　　p. 19

To justify a court in setting aside a partition of real estate on the ground of a mistaken judgment on the part of the commissioners, the mistake must be a serious one, and the evidence of it too plain to be in doubt.　　　　　　　　　　　　p. 24

*Decided January 13th, 1915.*

An appeal from the Circuit Court for Calvert County in Equity.　(BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE. JJ.

*John B. Gray,* for the appellants.

*J. Briscoe Bunting,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Calvert County, overruling the exceptions of the appellants and ratifying the return of commissioners appointed by that Court to make partition of and divide the land of Franklin Cranford, deceased, between his heirs at law.

The deceased left a widow, two sons and three grandchildren, children of a deceased daughter, two of whom were minors under the age of twenty-one years, and the grounds

of the exceptions filed by the three grandchildren are as follows:

"1st. Because the commissioners were not sworn as required by law and the commission issued in said cause, before entering upon their duties in the premises.

"2nd. Because the return of the said commissioners filed as aforesaid does not show that notice was given to the parties interested as required by law.

"3rd. Because one of the commissioners, to wit, Evered B. Mead, owned property adjoining the property to be partitioned, which fact was unknown to your exceptants at the time of the appointment of the commission.

"4th. Because the value placed upon the property by the majority of the commissioners is absurdly and ridiculously low and far below its real or market value.

"5th. Because the commissioners who placed the valuation upon the property and who signed the return, did not consider the views of valuation of the two commissioners who refused to sign the returns and completely ignored them in making up their returns.

"6th. Because the property could have been divided into three equal parts without loss or injury to the parties interested."

The exceptions were set down for hearing, with leave to the parties to take testimony, and the case was finally heard upon the exceptions and the evidence produced by the parties in pursuance of said order. The appellants rely, in this Court, upon the first, second, third and fourth exceptions, and the others are not pressed.

It appears from the evidence that the five commissioners went upon the property and began the survey of the land on the 22nd of December, 1913; that they did not take the oath attached to their return that day because they were unable to secure a Justice of the Peace; that they did not complete

the survey of the land on the 22nd, and that they met again on the property for that purpose on the 27th of December, on which day each of the commissioners took the oath before the completion of the survey; that they met again on two other days, and after ascertaining the result of the survey, the number of acres in the property, etc., endeavored to determine the value of the property; that they were unable to reach an agreement as to the value of the property, with the result that three of the commissioners made and filed their return, in which they state: "That all the commissioners appointed by the said Court met upon the said property according to the notice given and qualified by taking the oath annexed to the commission and proceeded to have the said lands surveyed and laid out and agreed that the said property could not be divided in more than two parts without loss and injury to the parties entitled, but that the commissioners Joseph E. Ogden and John E. Wilburn were unable to agree with the subscribing commissioners as to the value of the said property, whereupon, the subscribing commissioners, being a majority of the commissioners appointed as aforesaid, valued the said property according to our skill and judgment as set forth in this their return," etc.

It therefore appears that no determination, decision or conclusion was made or reached by the commissioners, and no part of the duties imposed upon them was completed until after each of the commissioners had taken the required oath, and that the parties interested had all the protection the oath was intended to secure. While the commission, and the approved practice, required the commissioners to take the oath before undertaking to discharge their duties, their failure to strictly comply with the requirement is not sufficient, *under the circumstances,* to vitiate their return. *Jordon* v. *McNulty,* 14 Col. 280.

In regard to the second ground of the exceptions to the return, it is important to note that it is not alleged that the required notice was not given, and there is no question here as to whether a notice was *in fact* given. The single inquiry

is, does the return, in the absence of any suggestion or aver-
ment to the contrary, sufficiently show a compliance with the
statutory requirement?

The bill was filed under the provisions of Article 46 of
the Code of 1912, and section 34 of that article provides that,
"In the execution of this article, and before any proceeding
is had by the commissioners, they, or a majority of them,
shall cause notice to be given to all the parties concerned by
advertisement set up at the door of the court-house of the
county or counties or city where the lands may lie, and in
such other public places in the county or counties or city as
they may direct, at least thirty days previous to their pro-
ceeding to execute the said commission." Section 37 pro-
vides that "In all cases where, by this article, any notice or
publication is required, a statement made in the proceedings
that due notice, according to law, has been given, or to that
effect, shall be *prima facie* evidence that notice was given
according to law." Section 42 requires the commissioners to
make a return of their proceedings to the Court, which may
reject or ratify it, and authorizes an appeal from the judg-
ment of the Court, and section 70 declares that, "No pro-
ceedings of any commissioners under this article shall be set
aside for matter of form." The manifest object and purpose
of these provisions is to provide for a fair and equitable parti-
tion and division of property between heirs at law entitled
to it, and while safeguarding their interests, and affording
them ample protection from the evil consequences of a sub-
stantial departure from the procedure pointed out, there is
an express inhibition against setting aside the proceedings
of the commissioners for unsubstantial and formal irregulari-
ties.

The return of the commissioners in this case states that
after taking the oath, etc., "and having given due notice to
the parties of the time and place of our meeting, we did,"
etc., and the contention of the appellants is that it does not
show that they gave the notice required by section 37. In the
case of *Brownell* v. *Town of Greenwich,* 22 N. E. 24, the

proceedings involved were statutory, and the case was submitted upon an agreement containing, among other things, the stipulation that the judge of Washington County "duly adjudged, determined, and ordered," etc. In construing the agreement the Court of Appeals of New York said: "The statute authorized the county judge to so 'adjudge and determine' only in case it had been in all things complied with. *Laws* 1869, Ch. 907, sec. 2. How then, could he 'duly' adjudge unless every step required had been taken? 'Duly,' in legal parlance, means according to law. *Gibson* v. *People,* 5 Hun. 542, 543; *People* v. *Walker,* 23 Barb. 304; *Fryatt* v. *Lindo,* 3 Edw. Ch. 239; *Burns* v. *People,* 59 Barb. 531, 543; *Webb* v. *Bidwell,* 15 Minn. 479, 484 (Gil. 394). It does not relate to form merely, but includes form and substance both. The expression 'duly adjudged,' as used in the statement for the submission of this controversy, therefore, means adjudged according to law,—that is, according to the statute governing the subject,—and implies the existence of every fact essential to perfect regularity of procedure, and to confer jurisdiction both of the subject matter and of the parties affected by the judgment, including the defendant." In the case of *Dreher* v. *Yates,* 43 N. J. L. 473, the ordinance in question authorized the officers to remove certain nuisances, "if such article or thing shall not be removed within two hours after notice to the owner thereof," and the Court in disposing of a demurrer to a plea said "The plea, in this respect, does not explicitly state, as it undoubtedly should do in strictness, that such a two hours' notice was served, but in lieu thereof it avers that the defendants proceeded to remove the obstruction, 'after due notice in writing to the said plaintiff, to remove the same, and after the time limited in said notice for the removal of the same.' It will be noted that the allegation is that due notice was given, and that due notice must mean, *ex necessitate rei,* a two hours' notice. A traverse, therefore, of the allegation of due notice would, in substance and by indirection, raise the issue whether the notice required by the law had been given." And

in the case of *Slatery* v. *Doyle,* 61 N. E. 264, the Supreme Court of Massachusetts said: " 'Due notice' must mean in the manner prescribed by law." See also *Words and Phrases,* Vol. 3, p. 2227.

It would seem therefore upon authority as well as upon a fair construction of section 37 of the Article referred to, that the statement in the return that the commissioners had given "due notice" should be construed to mean that they had given the notice required by section 34. The appellant, however, cites and relies upon the cases of *Cecil* v. *Dorsey,* 1 Md. Ch. 223, and *Stallings* v. *Stallings,* 22 Md. 41. In *Cecil* v. *Dorsey,* the return states that the commissioners had given "reasonable notice," and the Chancellor said: "They must say, either that they gave at least thirty days' notice, or due notice according to law (which is the same thing substantially), or to that effect, or their proceedings do not conform to the law. To say that the statement, that reasonable notice was given, is sufficient, would be to refer to the opinion of the commissioners in each particular case, the reasonableness of the notice." In the case at bar the statement is not that *reasonable notice* was given, but that due notice was given, which would seem to comply with the requirements of the Chancellor in the case referred to. In the case of *Stallings* v. *Stallings, supra,* the appeal was from a final decree in the case, and JUDGE COCHRAN, in pointing out a number of defects in the return of the commissioners, said: "The return states, 'that after having given due notice, according to law, to the parties, they entered,' etc. What notice was given does not appear, and at most the return only shows that such notice was given as the commissioners thought was sufficient to satisfy the terms of the Act. That, in our opinion, was not sufficient. The return ought to show affirmatively what the notice was, as well as how it was given, so that the real fact would appear to the Court entirely disconnected and free from the inferences of the commissioners in regard to its sufficiency." After referring to

that defect, among a number of others, the learned Judge said further: "But there are other fatal defects," and then proceeds to point out what the Court designated as "fatal defects." No reference is made in that case to the decision in *Cecil* v. *Dorsey,* or to the provision of what is now section 37 of the Code, and if we were to construe the language of the Court to mean that the statement in the return as to the notice rendered it fatally defective, we would have to assume that the Court entirely overlooked the conclusion of the Chancellor in *Cecil* v. *Dorsey, supra,* as well as the express provision of the statute. What the Court meant in *Stallings* v. *Stallings, supra,* was that the better practice required the commissioners to state definitely what notice was given, and in that view we entirely concur. See also *Carey's Forms,* 604.

In regard to the third exception it is only necessary to say that Mr. Mead was not disqualified because of the fact that he owned property adjoining that to be divided by the commissioners.

According to the testimony of John E. Wilbern and Josehp E. Ogden, the two commissioners who declined to unite in the return of the majority of the commissioners for the reasons stated in the return, and Thomas J. Basford, the father of the appellants, the land to be divided was worth from $6,000.00 to $6,590.00, while the three commissioners who signed the return, and a number of other witnesses, who resided in the neighborhood of the property, valued it at from $4,000.00 to $4,500.00, the value stated in the return being $4,500.00. It would serve no purpose to discuss this evidence in detail. The commissioners who made the return base their valuation upon the character and condition of the land and the condition of the buildings, and the other witnesses whose testimony was given in support of the return, were not only familiar with the character of the land and the condition of the buildings and improvements, but were able to state the value of the crops raised, on the property.

In the case of *Crouch* v. *Smith,* 1 Md. Ch. 401, the Court said: "In the case of *Cecil* v. *Dorsey et al.,* this Court was recently called upon to consider the effect which should be given to the valuation made by commissioners, appointed to make partition of the real estate among the parties entitled; and upon full argument and deliberation it was decided, that though such valuation was not conclusive, and might be rejected if clearly shown to be erroneous, yet still it was entitled to great respect, and would not be disturbed unless the weight of evidence in opposition to it was decidedly preponderating. The commissioners were regarded as occupying the double capacity of arbitrators and witnesses, and it was thought that the Court would not be justified in reversing their judgment, unless upon evidence of error as strong or stronger than would induce a court of law to reject the verdict of a jury, and order a new trial." This view is the one expressed by *Mr. Miller* in his work on *Equity Procedure,* section 440, and in the comparatively recent case of *Claude* v. *Handy,* 83 Md. 225, JUDGE BOYD, referring to the return of commissioners appointed to make partition of property, and speaking for this Court, said: "It was *their* duty and not that of the Judge to view and examine the properties, place just valuations on them and allot them fairly and equally. Their functions are exceedingly important in the administration of justice, and the acts done by them, with the peculiar opportunities they have of reaching proper conclusions, are not permitted by the law to be questioned by conflicting or doubtful testimony. Even if a Court be of the opinion that it might have found differently as to some of the values, it can not substitute its judgment for theirs, unless sustained by clear and satisfactory evidence of error on their part, which has wronged one or more of the parties whose property they are selected to value and allot. Some courts regard these reports and awards in the light of verdicts of juries, and will set them aside only upon grounds similar to those upon which a verdict will be set

aside and a new trial granted. .17 *Am. and Eng. Enc. of Law*, 777. Some treat them with more respect than verdicts when the commissioners are selected by the parties in interest, with special reference to their qualifications. *Livingston* v. *Clarkson*, 4 Edw. Ch. (N. Y.) 596. 'To justify the Court in setting aside a partition of real estate on the ground of a mistaken judgment on the part of the commissioners, the mistake must be a serious one and the evidence of it too plain to be mistaken. If the evidence be doubtful or contradictory, the report will be sustained * * *.. Upon no subject do men differ more in opinion than in the value of real estate.' "

Applying these well established principles to the case at bar, we are unable to find such evidence of error in the judgment of the commissioners who made the return as would justify the Court in setting it aside.

In this view of the case it is not necessary to pass upon the exceptions to the evidence, only one of which was pressed in this Court, and for the reasons stated we must affirm the order from which this appeal was taken.

> ·*Order affirmed, with costs to the appellees, and case remanded.*