[No. 27825. Department One. October 29, 1940.]

MARY E. VON HERBERG, *Appellant*, v. JOHN G. VON HERBERG, *Respondent and Cross-appellant*.[1]

[1]Reported in 106 P. (2d) 737.

102

*Ballinger, Hutson & Boldt* and *A. J. Falknor (Kenneth C. Hawkins,* of counsel), for appellant.

*Allen, Carey & Rombauer* and *Rummens & Griffin,* for respondent and cross-appellant.

SIMPSON, J.—This case involves a petition for a change in the amount of allowance made to plaintiff in a divorce case for alimony and the support of children, and for the division of property commonly owned by plaintiff and defendant. The case was tried to the court, and decrees were entered reducing the amount provided in the interlocutory decree for alimony and support, fixing the amount in which defendant was in arrears in the payment of those sums, and dividing the property which the parties owned as tenants in common. Each party has appealed.

The record is voluminous, and we will epitomize the facts so far as they may be necessary for the understanding and decision of the questions presented to us.

Mary von Herberg will be referred to as appellant and John G. von Herberg as respondent.

The parties were married in the year 1911. There were born to this union six children, whose ages were, at the time of filing the divorce complaint March 29, 1934, as follows: Philomene, 21; Charlotte, 19; Josephine, 17; John, 16; Miriam, 12; and Rita, 10 years of age.

August 27, 1934, von Herberg and wife entered into a written agreement as follows:

"VON HERBERG VS. VON HERBERG

"Agreement reached on August 27, 1934, after case noted for trial, coming on for trial upon said date, as follows:

"(1) Mrs. von Herberg takes the decree without contest.

"(2) Mrs. von Herberg is to be paid $650.00 at once for the purpose of paying outstanding bills.

"(3) Mr. von Herberg agrees to pay Mrs. von Herberg as support money for herself and children the sum of $750.00 per month beginning September 1st, 1934.

"(4) Mrs. von Herberg is to have the use of the house until the house is sold or other disposition made.

"(5) Mr. von Herberg pays Mrs. von Herberg for Josephine for her schooling and preparation therefor for the school year beginning September 1st, 1934, the sum of $250.00.

"(6) Mr. von Herberg agrees to pay the actual tuition and book cost for both Phil and Charlotte for the school year beginning September 1st, 1934, and after the school year beginning September 1st, 1934, agrees to pay the actual tuition and book charges for the three girls in the University of Washington.

"(7) Mr. von Herberg agrees to place John in a school to be mutually agreed upon. In the event the

parties are unable to agree upon a school the said school shall be fixed and determined by Frank S. Bayley and Jay C. Allen. All expenses of this school to be borne by Mr. von Herberg.

"(8) The decree shall provide that there has been no property settlement and that all property now belonging to the parties whether now in one name or the other is community property and that the property shall be held from this time forth as joint tenants.

"(9) Mr. von Herberg agrees to pay to Bayley & Croson the sum of $500.00 as attorneys' fees.

"(10) That there shall be no other costs taxed in this case other than what has already been paid.

J. VON HERBERG

MARY E. VON HERBERG"

The interlocutory degree of divorce was entered August 28, 1934. It provided:

"(2) That the plaintiff be, and hereby is, given the care, custody and control of the minor children, Charlotte, Josephine, John, *Marian* and Rita. . . .

"(4) That the defendant pay to the plaintiff herein as support money for herself and the minor children the sum of $750. per month beginning September 1, 1934. . . .

"(7) That the defendant pay the actual tuition and cost of books and all fees incident to the attendance at the University of Washington of the two girls, Philomene and Charlotte for the school year beginning September 1, 1934, and shall pay said tuition and expenses so long as the said girls shall be in attendance at the University of Washington. That after the school year beginning September 1, 1934, the defendant shall pay all costs of tuition, fees, charges and book expenses for the three girls, Philomene, Charlotte and Josephine in attending the University of Washington.

"(8) That the defendant defray all expenses of the minor son, John, in a school to be mutually agreed upon between the plaintiff and defendant, and in the event that the said plaintiff and defendant are unable to agree upon a school then the said school shall be fixed in turn by Frank S. Bayley and Jay C. Allen.

"(9) That all provisions herein with respect to any of the minor children shall be, and hereby are, subject to review and to the further order of the Court.

"(10) That the defendant herein shall have the right to see the said children at all reasonable and seasonable times and by agreement of the parties hereto shall have the right to have the children with him.

"(11) All property now standing in the name of the plaintiff and defendant is hereby found and agreed to be community property; no division of the property is being made at this time and all property now existing in the name of either party shall be held by the plaintiff and defendant herein as joint tenants; provided, however, that neither party hereto shall be permitted to bring any action for partition, division or separation of the property prior to the expiration of a period of two years from the date of this decree, unless same is consented to by the other party."

There was no appeal from the interlocutory decree.

February 27, 1935, appellant filed a petition for a modification of the interlocutory decree. The petition was based on the allegation that the decree was entered through fraud practiced by the defendant. The petitioner then prayed that the interlocutory decree be modified and supplemented by having the property mentioned described and defined, and that the court make division of the pieces and parcels thereof as were capable of division.

On the same day that the petition for modification was filed, the court signed an order to the effect that respondent should appear March 13, 1935, and make a

". . . complete disclosure of all and every kind of property owned by the parties hereto as a marital community on the 28th day of August, 1934, and further to show cause if any there be why he should not at said time account to the plaintiff for any and all of such property which might have been sold, exchanged or otherwise disposed of between August 28,

1934, and the date of said hearing and to further account for the rents, issues and profits of said properties between said dates."

March 12, 1935, respondent filed his answer to the show cause order. March 6, 1936, the final decree was entered. That decree dissolved the bonds of matrimony, and then stated:

"ORDERED, that so much of the interlocutory decree heretofore entered herein as is involved in the petition for modification so filed by the plaintiff, that is to say, the said interlocutory decree except as to Paragraph 11 thereof be and the same is hereby confirmed; the court, however, because of said petition for modification of paragraph 11 of said interlocutory decree reserves and preserves jurisdiction to consider said petition notwithstanding this final decree of divorce, if the court otherwise would have jurisdiction to entertain the same, and to enter such supplemental order or decree with reference to the matters therein set forth as the court may upon the hearing thereof determine should be entered and that the entry of this decree shall have no affect on the court's jurisdiction so to do, it being stipulated in open court between defendant and plaintiff that the entry of this decree shall in nowise affect the court's jurisdiction or divest it of any jurisdiction which it might otherwise have; it is further,

"ORDERED, by and with the consent of the parties that the defendant shall within ten (10) days from this date furnish to the attorneys for the plaintiff a list, schedule or statement of the community property of the plaintiff and the defendant as of August 28th, 1934, showing any and all changes which may have occurred in or to said property list and together with any encumbrances existing against any items thereof."

The petition for modification was first brought to the attention of Honorable J. T. Ronald, superior court judge, who made an order of reference. This order provided for the appointment of S. E. Hoover as a referee. The referee was ordered to:

" . . . examine into and to report to this court as to all properties of whatsoever kind, character or description as stood in the name of or were the property of either John G. von Herberg or Mary E. von Herberg or the community composed of John G. von Herberg and Mary E. von Herberg on the 28th day of August, 1934, and also to report to the court as to any and all changes which have occurred in any of said properties or in the status thereof since said 28th day of August, 1934, showing also in detail all encumbrances affecting said properties and all indebtedness of said parties or either of them as of said date which may or might become a charge upon said properties and also reporting to the court all rents, issues and profits of said properties subsequent to the said 28th day of August, 1934, and all disbursements which may have been made from said properties or from the rents, issues and profits thereof subsequent to said 28th day of August, 1934."

June 22, 1936, respondent filed his petition to modify that portion of the decree which provided for the payment of alimony and funds for the support of the children. The petition was supported by the affidavit of respondent, in which it was stated that his financial condition had become such as to make it impossible to pay the sum of $750 monthly provided for in the decree, and that appellant had refused him the right to see his minor children. Based upon the showing made in the motion and affidavit, the court signed an order to show cause why the petition should not be granted.

Following a protracted trial, the court entered its decrees as hereinbefore indicated. The judgment modifying the allowance for alimony and support decreed that respondent was delinquent in his payments to appellant in the sum of $4,581.80. That judgment further provided:

"It Is Hereby Considered, Ordered and Adjudged by the court that defendant is entitled to a modification of said interlocutory decree so as to reduce said allow-

ance of $750 per month contained therein in the sum of $100 per month at the time each of said children attained or attains the age of 21 years or ceased or cease to be a member of plaintiff's household, and said interlocutory decree is hereby so modified; and as so modified the court does hereby adjudge that defendant is delinquent in the payment of said alimony in the sum of $4,581.80; and It Is Further Hereby Adjudged and Decreed that all allowances by way of support money for the benefit of plaintiff shall cease and determine upon the expiration of thirty days from the date of the entry of this decree; or, in the event that an appeal to the Supreme Court be taken from this decree, then said allowance of $250 per month for the benefit of plaintiff shall continue until the coming down of the remittitur from the Supreme Court after the determination of said appeal, and, in the event that this decree be affirmed upon said appeal, defendant shall be entitled to offset the amount so paid during the pendency of said appeal against any indebtedness then owing by him to plaintiff or against any property of plaintiff which may then be in defendant's hands.

"It Is Hereby Further Ordered, Adjudged and Decreed that defendant shall continue to pay to plaintiff for the support of Miriam, a daughter of the parties hereto, the sum of $100 per month until said Miriam attains the age of majority, or leaves the custody of the plaintiff, and shall pay to plaintiff for the support of Rita, a daughter of the parties hereto, the sum of $100 per month until said Rita attains to her majority, or leaves the custody of plaintiff.

"And the court Does Further Hereby Adjudge and Decree that this modification of said interlocutory decree is based wholly upon the court's construction of said interlocutory decree and of said agreement of property settlement, and not upon any evidence of change in the conditions of either of the parties hereto, and that in this decree it is not exercising, and does not exercise, in any manner its discretion except as it has herein apportioned said allowance of $750 per month awarded to plaintiff as support money under said interlocutory decree and allocated the same to the support

of plaintiff on the one hand and to the support of each of said children on the other hand, and that except for such allocation and apportionment of said support money, and its ascertainment of the time when each of the three older children named in said interlocutory decree ceased to be entitled to support by reason of coming of age or ceasing to be a member of plaintiff's household, and the ascertainment of the amount of the alimony which has accrued and is unpaid, this decree is based wholly upon the court's construction of the legal effect of said interlocutory decree and of said agreement of property settlement."

The trial was had in two sections. The first started October 6, 1937, and ended December 15, 1937. The second phase of the trial started January 16, 1939, and was completed April 29, 1939. During the first portion of the trial, appellant was represented by Attorneys Eggerman & Rosling. The second portion of the trial was conducted by Ballinger, Hutson & Boldt. The record is replete with testimony taken at various times by different counsel concerning the same issues. This has made it very difficult to ascertain the facts reflected in the evidence produced by the parties to this action.

At first, we are met with a motion on the part of respondent to strike the statement of facts. We do not deem this motion to be well taken, in view of the certification by the trial court in the following words:

"I do further hereby certify that the same contains all of the material facts, matters, and proceedings heretofore occurring in said cause and not already made a part of the record therein."

When such certification has been made, we are foreclosed from further inquiry, in the absence of evidence of manifest error on the part of the trial court in considering the contents of the statement of facts. *Boothe v. Bassett,* 82 Wash. 95, 143 Pac. 449, 7 A. L. R. 145; *State ex rel. Simcoe Sheep Co. v. Superior Court,* 2 Wn.

(2d) 594, 98 P. (2d) 977. We find no evidence of such error in the instant case, in which a hearing was held regarding the accuracy of the statement of facts, and in which full consideration was given to the proposed statement by the court.

The motion to strike the statement of facts is denied.

■ We next deal with the correctness of the trial court's modification of the alimony and support decree allowance. As will be noted in the decree quoted above, the court determined that instead of $750 per month, appellant should only receive $100 per month for each of the children, so long as that child remained a minor and remained in the custody of appellant. No further allowance was to be given to appellant for her own support.

The authority of the court to modify the alimony and support decree was created by Rem. Rev. Stat. (Sup.), § 988 [P. C. § 7507], Laws of 1933, p. 432, §1, which provides, in part,

" . . . which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, which order as to alimony and the care, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require; . . ."

It will be noted that the trial court based its modification on its interpretation of the wording of the interlocutory decree. We are not able to affirm the modification on that ground, but do find such a change of circumstances of the parties as will support the modification mentioned in the statute.

Appellant strongly urges that she is in debt and has been unable to properly support herself and children on the allowance originally given to her, and contends that the termination of all allowances, except for the

minor children in her custody, would be manifestly unfair. However, although appellant was in debt at the time of the trial in a sum in excess of ten thousand dollars, it is apparent from the record that she either had no desire, or was tempermentally unable, to live within her means. Indicative of her lack of business ability or stabilized judgment, it is a fact that, from the time of the divorce to the trial, she had employed eight firms of attorneys, at a cost exceeding twenty thousand dollars. Each of the firms was composed of competent lawyers, able to properly advise her and carry on all of her litigation. The added charges made by the successively employed firms were necessitated by the fact that they had to do a large amount of extra work in ascertaining what had already been done. In addition to the employment of the local firms just mentioned, appellant paid a New York attorney three thousand dollars for legal advice, and that attorney is asserting a claim against her for an additional amount greatly in excess of that sum.

We are of the opinion that the conditions surrounding appellant and respondent have changed to a remarkable extent. At the time of the divorce, appellant had her children at home. Since that time all of them, except the two younger ones, have either arrived at the age of majority or have left home. It is also a fact that, by the partition of the commonly held property, appellant was given property of substantial value, and should be able to realize a sufficient amount of income therefrom so as to support herself in a comfortable manner, provided she exercises some degree of reason in her expenditures. During the period of time since the decree, respondent's position financially has grown steadily worse. We feel that a short summary of his financial career will be of value in showing this change.

The early financial life of the von Herbergs reads

like a business romance, which later was almost destroyed by that horror of recent years, the so-called depression. Respondent and his partner, Claude S. Jensen, operated the Alhambra Theater in Seattle. Mary Darling was the piano player in that theater. She became Mrs. von Herberg and started married life in an apartment above the theater. The business prospered. Jensen and respondent purchased additional theaters, until, at the height of their business career, they sold their interests for approximately $5,000,000. Respondent realized about $1,600,000 for his interest. A portion of this amount, however, was evidenced by securities. He then embarked upon new enterprises, which consisted mainly of erecting a business block in Seattle and the Naches Hotel in the city of Yakima.

Then, at the start of the depression, the Fox Theater Corporation, representing the principal purchaser of respondent's interest in the theaters, became insolvent, and respondent was hard put to secure enough money to save his properties. He abandoned a practically completed business building in the city of Seattle, he borrowed large sums to reopen some of the theaters which had been turned back to him, and he was unable to complete the hotel in Yakima. After the divorce, respondent remarried, moving to a small apartment, but he continued to care for the business interests still left to him and appellant. In his efforts to rehabilitate himself, he has been successful only in holding his properties together. His debts have not materially decreased.

As a result of the partition decree, moreover, the only property remaining for respondent is heavily encumbered, all of the free and clear property having been awarded to appellant. It will be difficult for respondent to salvage much money from the wreckage of his once mighty financial enterprises. We feel that,

under these changed circumstances, the modification of the interlocutory decree was justified.

The fact that the parties entered into an agreement relative to the allowance does not in any way preclude the court from subsequently modifying the allowance, in view of the fact that the agreement was incorporated into the decree and became a part thereof. The allowance was actually fixed by the decree itself, and is accordingly subject to modification. *Troyer v. Troyer,* 177 Wash. 88, 30 P. (2d) 963.

It is next urged by appellant that the court erred in allowing respondent compensation for his services in managing the properties owned in common and in conducting the business connected with those properties. The salaries allowed by the court, which covered the period of time subsequent to the entering of the interlocutory decree, amounting to a total of $20,800, were received from the Ambassador Commercial Company and the Commercial Hotel Company. The stock of those companies was owned by the former community. This allowance amounted to a considerable reduction from the salary claimed by respondent.

It is the general rule, in the absence of an agreement, that one tenant in common cannot charge his cotenant for services in the care and management of common property. 62 C. J. 486; 27 A. L. R. 255.

In this case, however, the compensation was voted to respondent by the corporations mentioned. Appellant contends that the corporate veil should be pierced, due to the fact that the stock was wholly owned by the von Herbergs, except for one qualifying share owned by respondent's attorney. We do not regard this as a proper case for so disregarding the corporate entity, however. The mere fact that the entire stock ownership was in the family does not of itself afford a sufficient basis for such a holding. *Hackensack*

*Trust Co. v. Hackensack,* 116 N. J. L. 343, 184 Atl. 408; *Milwaukee Toy Co. v. Industrial Commission,* 203 Wis. 493, 234 N. W. 748; *Mente & Co. v. Louisiana State Rice Milling Co.,* 176 La. 476, 146 So. 28. Before the corporate entity will be disregarded, there must be a showing that fraud or injustice would result from a failure to pierce the veil, along with a showing that the corporate form is being used as a mere instrumentality by the individuals owning the stock thereof. *Sommer v. Yakima Motor Coach Co.,* 174 Wash. 638, 26 P. (2d) 92; *Garvin v. Matthews,* 193 Wash. 152, 74 P. (2d) 990; *Dummer v. Wheeler Osgood Sales Corp.,* 198 Wash. 381, 88 P. (2d) 453.

In the instant case, appellant participated in the formation of the corporation, was co-owner of stock therein, was a member of the board of trustees, and knew that salaries were being paid to respondent. On these facts, we fail to find any fraud arising out of respondent's action in receiving salaries from the corporations.

As for appellant's contention that respondent used the corporations as a subterfuge so as to enable him to unjustly collect for his services, contrary to the usual rule governing the rights of cotenants, we do not regard it as a valid argument. Had the salaries been voted *after* the decree, the element of fraud and unfair evasion might be regarded as present, and we would then have a proper case for disregarding the corporate entity. Here, however, the salaries were established long before the divorce action was started; and there is no showing that they were begun in order to enable respondent to avoid the operation of the normal cotenancy rule.

The next objection of appellant to the salary allowance is that the salaries were voted by respondent. It is true that the rule is generally accepted in this

jurisdiction that, when directors of a corporation vote upon matters in which they are personally interested, the action of the board may be set aside at the instance of the corporation or of a nonconsenting stockholder. *Sacajawea Lumber & Shingle Co. v. Skookum Lumber Co.,* 116 Wash. 75, 198 Pac. 1112. However, it is also the rule that nonconsenting stockholders may ratify or acquiesce in the voidable action of the board, thereby estopping themselves from avoiding it, provided the act was, as here, within the powers of the board. *Tefft v. Schaefer,* 136 Wash. 302, 239 Pac. 837, 1119.

In the instant case, we find that there was sufficient ratification or acquiescence on the part of appellant so as to estop her from avoiding the salary voted to respondent. Appellant was a member of the board of directors of the corporation and was present when the by-laws were adopted. Those by-laws provided that the board of trustees had the right to fix the salaries of the manager and officers of the corporation. The corporate records disclosed that appellant continued as a member of the board of trustees, although during the years after the entry of the divorce decree it is evident that she took no active part in the meetings or the business of the corporations. She was duly notified as to the holding of those meetings, however. It is evident that she knew that respondent was receiving some salary since a date long previous to the divorce decree. She made no objection to the payment of salary to respondent until the retrial in 1939.

A comparison of these facts with the facts indicated in the following excerpt from *Tefft v. Schaefer, supra,* indicates that appellant clearly comes within the rule announced in that case:

"Before the property was purchased in 1914, notice was sent to Tefft as trustee, who then lived some twenty miles from the office of the corporation. The

resolution advised him specifically of the purpose of the meeting. He chose not to attend. Thereafter, according to his own testimony, he saw the ground being improved by the installation of bunkers or other buildings for the use of the corporation, and saw the property continually used by the corporation until the day of the trial. It would seem that this was sufficient ratification or acquiescence upon the part of Tefft as a stockholder. It will be remembered that all of the stock from 1913 on was held by the three trustees, Tefft and the two Schaefers."

The trial court did not allow respondent the full amounts voted to him as salary, those amounts being deemed excessive.

Although appellant was estopped from questioning the validity of the voting of salaries, no estoppel arose as to the excessive amounts voted and paid, the general rule being that directors may not vote excessive salaries to officers of the corporation; and courts of equity have the power to inquire into the reasonableness of the salaries voted to its officers by the directors of a corporation, considering the nature and extent of the services, and, if found to be excessive, they may grant adequate relief. 27 A. L. R. 300; 44 A. L. R. 570.

In the instant case, the evidence relative to the services rendered by respondent was as follows:

"Well, for example, the first thing I do when I arrive in Yakima, I start going through the hotel from top to bottom, checking up on it—start checking up on the machinery from the refrigeration to see that they properly keep their boxes defrosted and keep them cold enough and food is kept in the proper condition and where it belongs, so it is not wasted, checking up on the machinery; . . . what I do when I go over to the hotel, I go through every room in that hotel, check the equipment and I find that it pays to do that; I come in, I find a leaky faucet or toilet that doesn't flush properly, the fact that there isn't sufficient light over the mirror for a man to shave conveniently

—and occasionally there may be a room where they have overlooked the plug for those that use an electric razor, the equipment of the carpets and drapes in the room, whether or not in my judgment they should need changing, that is in the way of new equipment; after I go through this, I take the manager and housekeeper along with me, we sit down and check over these rooms, one by one, in regard to what changes we want to make . . . It is true I don't go buy the groceries but I check up on what they have in the way of what they are buying in the way of groceries, what kind of groceries, meat and ham; I take the sheets and pillow slips and towels and test them out for myself in regard to how they will stand washing, how they will stand certain hard wear and we don't leave those things to chance, so that we are sure we get the right quality of material; . . . Q. How often do you check up on financial reports and operation of the hotel? A. I get daily reports of the hotel from every department, of the amount of meals served in the coffee shop, amount of meals served in the dining room, what the average check is, what the receipts are in the hotel part, how many rooms are occupied and how much those rooms were sold for, what the average is, what the receipts of the cigar store are and the same in comparison with the year before and I might say I have right at my finger tips almost as much information as the manager himself, who is right on the job. I know what the meals cost to serve, I know what the food costs per day, I know what my average—what the percentage of my cost is daily, not only for overhead but the overhead split for payrolls, for rent, for food. Q. As a matter of fact, some portion of every day you devote to that hotel over there, whether you are in Yakima, Seattle or somewhere else? A. I do and check on every check that is paid out in regard to it. Q. Do you maintain any contact with the organization over there while you are away from Yakima? A. I maintain continuous contact with them, either by letter or telephone."

In addition to the above activities, it was shown that respondent had made many advantageous pur-

chases for the hotel, resulting in the saving of thousands of dollars.

We are of the opinion that two thousand dollars per month, which was the amount voted, was an excessive amount for the services rendered by respondent, and that the trial court properly reduced the salaries to four hundred dollars per month, which was a proper and reasonable compensation, in view of the work done and the results accomplished.

We come now to the question of partition. The trial was begun and completed without any pleadings by appellant other than her petition for modification of the interlocutory decree and for a division of such of the property as was presently capable of division. Although this was technically not instituted as an action for a partition, looking to the pleadings alone, the court and counsel during the trial referred many times to the division of all of the commonly held property; and, having in mind the theory of court and counsel, we treat the pleadings as amended to conform to the proof. By considering the case in this light, we have before us an equitable case for the partition of real and personal property commonly owned.

The decree provided, *inter alia*:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED by the Court as follows: That a partition cannot be made of each individual item of the joint estate of the parties hereto between them according to their respective rights without prejudice to the rights and interests of each of them.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said joint estate is of a net value, over and above all indebtedness chargeable against the same, which indebtedness the Court finds to be the sum of $303,422.28, in the sum of $234,721.76 and that each of the parties hereto is entitled to property or cash of the value of one-half thereof, or the sum of $117,360.88 and that said net value is arrived at after deducting

from the gross value of said estate the gross indebtedness chargeable against the same.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant is in arrears for support money under the order as heretofore made herein payable by him to the plaintiff in the sum of $4,582.80, and that he has withdrawn from the income of the property of said joint estate since the entry of the interlocutory decree herein, in excess of the amount drawn by plaintiff, the sum of $14,954.20; so that plaintiff is entitled to receive from defendant on account of said over-draft one-half thereof, towit: the sum of $7,477.10, so that plaintiff is entitled, in addition to cash and property of the value of $117,360.88, to the further sum of $12,-059.90 on account of said delinquent support money and said over-draft; so that she is entitled to receive in this partition decree by way of cash and property, the sum of $129,419.78, according to the values hereinafter stated."

The trial court considered the property as a whole and set aside to appellant the properties which, he believed, she should have, and then allotted certain other properties to respondent. In doing so, he took into consideration the net values of the various tracts of land and the stock owned in common. The properties given to appellant were not encumbered, and she did not have to assume any of the debts of the former community, nor any of those incurred by respondent subsequent to the signing of the interlocutory decree. Respondent, while given a larger portion of the property, was compelled to assume the·debts that he and his former wife had obligated themselves to pay. In this manner, the court endeavored to, and did, make an equitable division of all the properties owned in common. Reading the evidence relative to the values of the several properties leads us to the conclusion that the court divided them equally between appellant and respondent. As a matter of fact, the properties decreed

to appellant were of a higher character than those received by respondent. This advantage given to her was proper, when we take into consideration her inability to conduct business affairs and respondent's outstanding qualifications as a business man.

■ The basis for the court's right to make an unequal partition between cotenants is the time-honored doctrine of owelty, which has been codified in this state in Rem. Rev. Stat., § 881 [P. C. § 8327], which reads as follows:

"When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, the court may adjudge compensation to be made by one party to another on account of the inequality of partition; but such compensation shall not be required to be made to others by owners unknown, nor by infants, unless in case of an infant it appear that he has personal property sufficient for that purpose, and that his interest will be promoted thereby."

■ Although ordinarily owelty is effectuated by the award of money to the party receiving the smaller quantum of property, it may take place by the imposition of the obligation to pay off the encumbrances upon the party receiving the larger portion.

"We find no merit in the contention that the court erred in allowing the respondent properties of the value of $20,000 by reason of her assumption of mortgages in that sum. That some of the parties interested should assume them was essential to any partition, since there was no personal estate with which to discharge them. It is a mere matter of equity that the party assuming the indebtedness should receive in compensation property sufficient to meet the indebtedness. This provision was, in effect, a partition of the net estate. It is not prohibited by the statute and is supported by every consideration of equity." *Easly v. Easly,* 78 Wash. 505, 139 Pac. 200.

Appellant maintains, however, that the court, in a suit for partition, does not have the power to divide the property as was done in this case. Her counsel argue that each article of property should be partitioned and not the whole estate divided. They say:

"It is our view of the law of owelty that the court must, if it does not sell the property, divide the property *in specie,* or in kind, in as nearly equal shares as possible. If the shares cannot be divided equally without great prejudice to the parties, then the court may divide the property into unequal shares *in specie* and cause the inequality to be adjusted by the payment in cash from the one receiving the larger share to the one receiving a smaller share to the end that their interests are equalized."

In other words, appellant contends that the rule of owelty may only be applied to each specific piece of property, and not to the estate as a whole. They have cited in support of their contention *Bergman v. Rhodes,* 334 Ill. 137, 165 N. E. 598, 65 A. L. R. 344, and the cases annotated in that volume of A. L. R.

Neither the case above cited nor the ones contained in the annotation hold that owelty may not be decreed in cases in which the tenants in common hold two or more tracts of land.

Our attention has also been directed to *Smith v. Hall,* 20 R. I. 170, 37 Atl. 698; *Gonzalez v. Gonzalez,* 174 Cal. 588, 163 Pac. 993; *Rushing v. Massey,* 6 Tenn. App. 31; and *Cochran v. Colson,* 192 N. C. 663, 135 S. E. 794. These cases do no more than announce the rule laid down in the A. L. R. citation.

Our search of the authorities has revealed to us the fact that the method of partition followed by the trial court was proper, and we are convinced that, in partitioning an estate composed of several separate parts, the parts may be considered as comprising one com-

posite estate, a partition of which may be effected by the award of separate parcels, rather than by a partition in kind of every part, when such a division is to the best interest of the parties.

"Although parts of property to be partitioned are held by different titles in different interests, or the property consists of separate and distinct parcels or tracts, the whole may be treated as one estate for the purpose of making division and allotment where no injustice results. Thus, one tract or parcel may be allotted to one party and another to another, where the values are properly proportionate to their respective interests, or the share to which a party is entitled may be set off to him entirely out of one of several tracts, if the rights of the other parties are not thereby prejudiced; and each portion or tract need not be divided among all the parties, although division may be so made, and must be made where injustice would otherwise result. On the other hand, no party has a right to insist that his share or purpart be allotted to him wholly out of one of several parcels or tracts." 47 C. J. 503, § 585.

". . . where there are divers parcels of lands, messuages, and houses, partition need not be made of each estate separately so as to give to each party his moiety or other portion in every estate; but the whole of one estate may be allotted to one, and the whole of another estate to the other, provided that his equal share is allotted to each." 2 Storey's Equity Jurisprudence (14th ed.)., 270, § 893.

"Where the property is in several parcels, each parcel need not, and, if it would lessen the value of the property, should not, be divided, but one or more entire parcels may be assigned to each party, according to circumstances and the situation of the estate, . . ." 21 Amer. & Eng. Enc. of Law (2d ed.), 1164.

"Moreover, if the premises are two parcels of land, separated, the law permits the setting of the whole of one in partition to the plaintiff, and the whole of the other to the defendant." *Stannard v. Sperry,* 56 Conn. 541, 16 Atl. 261.

Cases recognizing the same rule are *Hagar v. Wiswall,* 10 Pick. (Mass.) 152; *Claude v. Handy,* 83 Md. 225, 34 Atl. 532; *Perry v. Jones,* 48 Okla. 362, 150 Pac. 168; *Thompson Estate Co. v. Kamm,* 107 Ore. 61, 213 Pac. 417, 28 A. L. R. 722.

There is no good reason why the court should be compelled to make a division of each particular piece of property owned in common by appellant and respondent.

We agree with the trial court that it was to the best interest of appellant, under the facts and circumstances of the case, to make the division which was made, and it was sufficient that the holdings were divided so as to enable each cotenant to receive property in exact proportion and value to his or her respective interest in the commonly owned property.

In so far as Rem. Rev. Stat., § 881, is concerned, we feel that it in no way conflicts with the general rule which we have found in the authorities considered. Owelty may still be awarded under this section, even though the estate divided be composed of several parcels separately awarded, rather than of a single parcel, unequally divided in kind.

One of the obligations of the parties, as determined by the court, was an indebtedness to Claude S. Jensen, a partner and associate of respondent. The trial court concluded that the joint estate was indebted to Jensen in the sum of $58,300, and deducted that amount from the gross assets, in addition to other liabilities. The evidence of respondent and Jensen relative to the transaction out of which the fifty thousand dollar indebtedness arose was as follows: Some time during the years 1926, 1927, and 1928, Jensen purchased a vacant business block in the city of Portland, Oregon. The price was approximately two hundred thousand dollars. Respondent purchased a one-half interest in

the block at a price of one hundred thousand dollars. The deal was carried out by having the property deeded to a corporation known as the Columbia Amusement Company, whose stock was equally owned by the von Herbergs and Jensen. Prior to this time, respondent, having secured financial backing from citizens of Yakima, had started and partially completed the Naches Hotel in that city, and had assured the investors that he could complete it with his individual fortune. However, the depression made it necessary to procure funds from some other source, and, accordingly, respondent attempted to resell his interest in the Portland realty to Jensen for a price of one hundred thousand dollars. The property had decreased in value by that time, and Jensen regarded it as being worth only one hundred thousand dollars in its entirety. Respondent, being desperately in need of funds, persuaded Jensen to pay him one hundred thousand dollars for his interest, agreeing verbally to reimburse Jensen to the extent of fifty thousand dollars at the end of two years, unless the property should be sold within that period, in which case he was to reimburse Jensen for any losses sustained, up to fifty thousand dollars. Von Herberg was already indebted to Jensen, and at that time he was given a cash amount by Jensen equal to one hundred thousand dollars, less the preexisting indebtedness. The testimony of Jensen and respondent was to the effect that the property was not sold, and that the fifty thousand dollar indebtedness accordingly was in existence.

No record of the agreement to pay the fifty thousand dollars was made, either by giving a note or by a book entry. Appellant argues from this fact that the debt never did exist, and that the agreement was not made as testified to by respondent and Jensen. However, we do not feel constrained to find that the trial court

erred in finding, as a matter of fact, that respondent's representation was true. No evidence was introduced to the contrary by appellant. Further, the trial court saw and heard the witnesses testify, and had full opportunity to judge as to their veracity and sincerity from an observation of their demeanor on the stand. We feel that his conclusions should not be disturbed, particularly when viewed in the light of the decrease in land values at the time of the transaction, and in view of the fact that respondent and Jensen had for many years conducted similar business transactions in the same manner, without any record thereof.

Objection is made that the evidence introduced concerning the obligation violated the parol evidence rule. This question arises because of the execution on April 14, 1931, of a written agreement relative to the sale by the von Herbergs to Jensen of their interest in the corporation owning the Portland property. The agreement recited the sale to Jensen and the fact that the company owned block 185 in the city of Portland. This was the realty with which we are here concerned. The agreement further provided:

"Now, THEREFORE, The facts being as above stated, said J. G. von Herberg and M. E. von Herberg, in consideration of and as part of the purchase of said 150 shares of stock from them by said C S Jensen, do hereby covenant to and agree with said C S Jensen as follows, to-wit:

"(1) If and when anything is collected on or realized by said Columbia Amusement Company on or from the above mentioned Bond said C S Jensen shall pay to said J G and M E von Herberg one-half of what is so collected or realized thereon.

"(2) If the obligations and liabilities of said Columbia Amusement Company, which are based on or arise out of anything occurring or transpiring prior to April 15, 1931, exceed $898.00, said J G and M E von Herberg shall, on demand, pay one-half of such excess to said

C S Jensen—it being understood and agreed that there shall be included in the obligations and liabilities referred to in this paragraph (2) any income taxes or intangibles taxes or excise taxes or other taxes not heretofore paid that have been or may be levied or assessed against said Columbia Amusement Company for any period prior to April 15, 1931.

"(3) There is, however, expressly excepted from the obligations and liabilities referred to in the foregoing paragraph (2) the taxes for the year 1930 on the aforesaid Block 185 which are payable in 1931—it being understood and agreed that in no event shall said J G and M E von Herberg or either of them be obligated or required to pay to said Columbia Amusement Company or said C S Jensen or any other person any part of said 1930 taxes or any other taxes on said Block 185."

Appellant maintains:

"(1) The agreement purports to be complete upon its face.

"(2) All of the essentials of a binding contract are present.

"(3) There is no ambiguity whatever with reference to any part of the agreement.

"(4) The parties have given specific attention to the existence of Block 185.

"(5) The parties have given specific attention to the happening of future events which may affect the subject matter of the contract. Instances of this sort are:

"(a) If one of the described assets (Pacific International Livestock Bond) is sold in the future, one-half of any amount collected or realized therefrom is to be paid to the von Herbergs and one-half to Jensen.

"(b) Not only division of future proceeds, but division of future liabilities is considered and liabilities which may come to light in the future are to be borne one-half by each of the parties. This includes general obligations, as well as income taxes, intangible taxes, excise or other taxes which have been or may be levied for the period described.

"(c) The von Herbergs are not required to pay any

part of the 1930 tax on Block 185, which taxes become payable in the future.

"In short, the agreement is a complete contract within itself. Specific mention is made of Block 185 and the parties have dealt in detail with every right and with every obligation of the von Herbergs which may mature in the future with reference to the subject matter of the contract."

From these basic objections, it is urged that the court erred in admitting and considering the oral evidence submitted, in that such evidence violated the rule which does not allow the terms of a written instrument to be varied or changed by parol evidence. Her counsel cite many cases from this court which adhere to the principle of law for which they contend. We are in accord with appellant's construction of the rule and its application in proper cases. However, we are unable to hold that it applies in the instant case.

Appellant concedes that parol evidence may be introduced to explain or show the real intent of parties to a written contract in cases in which it appears that the contract is ambiguous or incomplete; and that it is also proper to show the real consideration of a contract, when that consideration is not fully expressed in the instrument.

Appellant, however, contends that, in the agreement set forth, the transaction between the parties was fully and unambiguously set forth, and that to show the additional parol promise, would mean varying the terms of a completed instrument. This legal problem was thoroughly covered in *Sears, Roebuck & Co. v. Nicholas*, 2 Wn. (2d) 128, 97 P. (2d) 633. In that case, we held that, when the consideration is fully expressed in the written instrument, and when the admission of parol evidence of additional consideration would impose conditions and obligations in addition to those set forth in the written instrument, the parol evidence is

inadmissible. The rule enunciated, however, was recognized as being inapplicable when the instrument is incomplete upon its face. We conclude that the instrument in the case at bar permitted the introduction of parol evidence regarding additional consideration, even though contractual in nature, because of the fact that the door was left open by the following clauses in the agreement itself:

"Whereas it was agreed *as part of said sale* of said 150 shares of stock as hereinafter set forth:

"Now, THEREFORE, the facts being as above stated, said J. G. von Herberg and M. E. von Herberg, in consideration of and *as part of the purchase* of said 150 shares of stock . . ." (Italics ours.)

■ Appellant maintains that the contract relative to the fifty thousand dollar loan violates Rem. Rev. Stat., § 5825 [P. C. § 7745] (1), which provides that agreements not to be performed within one year from the making thereof must be in writing, signed by the party to be charged therewith.

The trial court was of the opinion that the statute did not apply in this case, because it was not necessary that the obligation to pay Jensen should arise more than a year from the date of the agreement, nor were the von Herbergs precluded from paying Jensen the amount involved whenever they saw fit.

We agree with the trial court that the statute of frauds has no application, for the reason that the contract was of the sort which could be performed at any time after its date. It was entirely possible, under its terms, that Jensen would sell the premises at once, sustaining a loss, and securing a right thereby to be reimbursed for one-half thereof by the von Herbergs, up to the fifty thousand dollar maximum. Further, there was nothing about the agreement which precluded the von Herbergs from paying the fifty thousand dollars to

Jensen at any time they pleased. Hence, the case came within the rule of *Dent Lumber & Shingle Co. v. Cedar-home Lumber Co.,* 141 Wash. 593, 252 Pac. 141; *Barash v. Robinson,* 142 Wash. 118, 252 Pac. 680; and *Peabody v. Pioneer Sand & Gravel Co.,* 164 Wash. 26, 2 P. (2d) 714. Those cases all hold that Rem. Rev. Stat., § 5825 (1), has no application where performance *could* take place within one year. In other words, the contract *must* be one running for more than one year, before the statute will apply.

Appellant cites *Tracy v. Barton,* 139 Wash. 440, 247 Pac. 734, as well as *Brock v. Button,* 187 Wash. 27, 59 P. (2d) 761, to sustain her position regarding the applicability of the statute of frauds to the agreement here involved. A reading of those cases, however, shows that, in both of them, the time of performance was necessarily to be more than a year from the date of the agreement, and they are in no way in conflict with our holding in the case at bar.

As for the $8,300 additional indebtedness to Jensen, we are convinced that there was sufficient evidence thereof to warrant the trial court's finding that it did exist, and we therefore sustain that finding.

This case was fully presented to the court by able counsel; as a matter of fact, it was tried twice. In the second phase of the trial, the court gave counsel the opportunity to introduce new evidence or to introduce again the evidence that had been presented during the first phase of the trial. The court very carefully considered all of the evidence introduced, studied the values of the various pieces of property, and divided the property equally between appellant and respondent, having in mind the ability of the one and the inability of the other to conduct business.

We are of the opinion that the distribution was prop-

erly made, upon the basis of doing justice to both appellant and respondent.

Respondent's cross-appeal is directed against the finding that respondent was in default in alimony and support payments in the sum of $4,581.80. We have considered this question and conclude that the trial court properly charged the amount against respondent.

The judgment is affirmed.

BLAKE, C. J., MILLARD, STEINERT, and ROBINSON, JJ., concur.

[1]Reported in 106 P. (2d) 733.