[No. 31708. ·Department One.   October 11, 1951.]

JOSEPH P. ADAMS et al., *Respondents*, v. THEODORE
W. ROWE et al., *Appellants*.[1]

*P. R. McIntosh* and *W. S. Lewis,* for appellants.

*Marvin Mohl,* for respondents.

MALLERY, J.—Theodore Rowe and Gladys Rowe, now known as Gladys Riggs, were married in 1921 in Ketchikan, Alaska.  Subsequently, they lived both in Alaska and in

[1]Reported in 236 P. (2d) 355.

Washington. They were divorced in Juneau, Alaska, in 1944.

Notwithstanding that they had community property worth in excess of twenty-eight thousand dollars, they decided that they would settle their property rights between themselves after the divorce. Accordingly, the property was not brought before the court for disposition. Afterwards, Theodore remarried and refused to make a division of the property, which stood in his name.

Gladys Riggs then brought another action, as a tenant in common, for partition of the property, against Theodore Rowe and his second wife, who is also a party to this action.

The property could not be easily divided equally. The court, thereupon, used a legal device known as "owelty of partition," which is sanctioned by the common law of this state; see *Von Herberg v. Von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737, and also by Rem. Rev. Stat., § 881 [P.P.C. § 83-87], which provides, *inter alia*:

"When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, the court may adjudge compensation to be made by one party to another on account of the inequality of the partition; . . ."

The partition action resulted in a money judgment for Gladys Riggs in the sum of $7,669.50. It remains unsatisfied in the amount of $5,011.66. No appeal was taken.

During the pendency of the partition action, and immediately before the entry of judgment, Theodore Rowe filed a declaration of homestead on the property subject to the action, which is here in question. Several years later, he quitclaimed the property to his second wife.

The instant action was brought by Gladys Riggs to set aside Theodore Rowe's declaration of homestead and the quitclaim deed, so that she could safely levy execution upon the property to satisfy her judgment. Under the old common-law forms of pleading, this action would be known as a supplemental bill in aid of the judgment.

In *Hillman v. Gordon,* 126 Wash. 614, 219 Pac. 46, this court quoted Mr. Storey in his work on Equity Pleadings (10th ed.) with approval, holding:

" '. . . a supplemental bill may also be filed, as well after, as before a decree; and the bill, if after a decree, may be, either in aid of the decree, that it may be carried fully into execution; . . .' "

Therein we also quoted 10 R. C. L. 567, with approval, as follows:

" 'When an irreversible, unreviewable, and unimpeachable decree has been finally obtained, numerous contingencies may yet arise to prevent the party who is entitled to enjoy the benefit of the decree from obtaining the fruits of it; and under certain conditions, such a party is entitled to maintain a bill to carry the decree into effect. . . . The power of the court of chancery to entertain a bill to enforce and carry into effect a prior decree is one of its original and undoubted powers, and it is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject-matter and the parties are the same in both proceedings.' "

We now examine Gladys Riggs' right, under this form of action, to have the quitclaim deed and homestead declaration set aside as to her.

▪ Theodore Rowe's quitclaim deed to his second wife, made after judgment in an action to which she was a party, is subject to Rem. Rev. Stat., § 10572 [P.P.C. § 434-45], which authorized a husband to convey property to his wife,

" . . . Provided, however, that the conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift, or conveyance: . . ."

The trial court properly set the quitclaim aside as to Gladys Riggs.

▪ As to the homestead declaration, we must decide whether or not it is good against the judgment for owelty herein. In *The Baltimore & Ohio R. Co. v. Trimble,* 51 Md. 99, it was held that the money judgment for "owelty," in an

unequal division of property, was an equitable lien in the nature of a vendor's lien. The reason was thus stated:

"The final decree operates as a conveyance, and transfers in severalty what was held in common. If the division is unequal in value, this inequality is compensated by the allotment of a sum of money sufficient to equalize the respective divisions. In other words, where one party gets more of the land than his co-tenant, he is required to pay for the excess, because the land to that extent, which has been allotted to him, is in fact and in the eye of the law the land of his co-tenant. It forms the consideration for which the payment is to be made, and in getting the land of another for a moneyed consideration, it must be that he is to be considered a purchaser. If the land had been directly sold by the co-tenant no question could be raised of the lien, and it would be held to extend to all the land so sold."

Our homestead statute, Rem. Rev. Stat., § 533 [P.P.C. § 50-29], provides:

"The homestead is subject to execution or forced sale in satisfaction of judgments obtained: (1) On debts secured by . . . vendor's liens upon the premises. . . ."

An owelty lien, being in the nature of a vendor's lien, must, under the statute, prevail over a declaration of homestead. See *Lyon v. Herboth*, 133 Wash. 15, 233 Pac. 24, in which we said:

"That statute cannot have any other meaning than that a homestead is subject to judgments based upon the purchase price. It seems to us plain that the legislature intended that it should be the public policy of this state that no one should be permitted to hold a homestead as against the person from whom he had purchased and to whom he had not paid the purchase money. Until the appellants obtained their judgment they did not have any kind of lien, but when it was obtained it became an enforcible lien on the respondent's homestead. There is no reason why a judgment representing the purchase money may not be as valid a lien against a homestead as a mortgage given by the purchaser representing the purchase money."

Up to this point, the appellant makes no particular objection. But, he says, the judgment is for money only,

and omits any specific provision for a lien. He cites rules of construction applicable to judgments, and correctly points out that an unambiguous judgment is construed from its face alone. Therefore, he contends, a lien cannot be read into the judgment. The fact is, however, that we do not need to find that it is in the judgment, but only that it exists.

This action was not brought to construe or reform the judgment. As an action in aid of a judgment, it is concerned with *remedies* based on, but *extrinsic* to, the judgment.

The issue in an action in aid of a judgment is similar, if not identical, to that raised by a plea of *res judicata*, the purpose of which is to ascertain the *issues* that had been decided. To this end the judgment, pleadings, and findings of the court can be examined. 2 Freeman on Judgments (5th ed.) 1638, § 771; 30 Am. Jur. 993, § 274. These show, without controversy, that the parties were tenants in common of the property partitioned, which is here in question. The existence of a vendor's lien follows for the reasons heretofore given. Had this been an action to construe or reform the judgment, appellant's position would have been well taken.

In setting aside the deed and declaration of homestead, the court acted within its power to aid the judgment.

The judgment is affirmed.

HILL, GRADY, DONWORTH, and WEAVER, JJ., concur.