# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>LESLIE BRADLEY REYNOLDS,<br><br>                Petitioner,<br><br>    and<br><br>BRIAN PATRICK REYNOLDS,<br><br>                Respondent.<br><br>BRIAN PATRICK REYNOLDS,<br><br>                Respondent,<br><br>    v.<br><br>CHARLES E. BRADLEY, JR., third party creditor,<br><br>                Appellant. | No. 80276-3-I<br>(consolidated with No. 81170-3-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Bradley, as assignee of a judgment against Leslie Reynolds, appeals the trial court's determination that his liens on her real property are junior to an owelty lien on that property awarded to Brian Reynolds as distribution of community property in the dissolution of the Reynolds' marriage. We affirm.

FACTS

Brian and Leslie Reynolds were married on November 2, 1991. During their marriage, the family purchased their home, which had a fair market value of $1,000,000. The Reynolds separated on April 22, 2007. The King County Superior Court entered a decree of dissolution of the Reynolds's marriage on October 1, 2008

In the dissolution action, the trial court sought to divide the community property equally. The family home was the primary community asset. The trial court awarded possession of the family home to Leslie Reynolds, subject to a lien to Bradley Reynolds for $342,115, to bear interest of six percent per year, payable on or before January 1, 2012.

In its findings of fact supporting the dissolution, the court found that Leslie Reynolds comes from a wealthy Connecticut family and was unsatisfied with the standard of living that her husband was able to provide. Leslie's father and brothers supplied significant gifts to underwrite her standard of living. As a result of overspending, substantial sums of money were owed to Leslie Reynolds's father, Charles Bradley, Sr.[1] Leslie Reynolds and her father entered into an agreement in 2003 which limited the source of repayment to sale of shares of stock Leslie owned.

---

[1] The money helped finance the purchase of two buildings in Seattle. Brian Reynolds managed the property, earning about $90,000 per year. The buildings were later sold and the proceeds were used to pay for an extravagant lifestyle, rather than repay Leslie Reynolds's father.

On June 24, 2008, after the Reynolds had separated, Leslie Reynolds and her father entered an agreed judgment in King County Superior Court for a principal amount of $615,580, plus interest and fees. The judgment was recorded on June 26, 2008. Charles Bradley, Sr. assigned the judgment to his son, Charles Bradley Jr. (Bradley) on December 17, 2010. In the dissolution action, the trial court found that this debt was payable solely from Leslie Reynolds's separate property.

Leslie Reynolds has not paid her obligations to either Bradley or Brian Reynolds. On July 3, 2018, Brian Reynolds obtained a judgment and confirmation of his owelty lien in King County Superior Court. The judgment, which included accrued interest, totaled $606,884. The judgment provided that it would bear interest at 12 percent per year.

On motion of Brian Reynolds, the court appointed a receiver to sell the family home. The net proceeds from the sale were $532,483. Only Bradley and Brian Reynolds submitted secured creditor claims. Reynolds claimed $560,488 and Bradley claimed $1,556,387. The receiver paid various costs of the sale, none of which is at issue here. It also paid $25,000 to Leslie Reynolds pursuant to an agreement between the receiver, Brian Reynolds, and Leslie Reynolds. The value of the homestead exemption, $125,000, was distributed to Brian Reynolds in July 2019. The balance remaining to pay secured creditors in February 2020 was $359,147. The receiver determined that all $359,147 should go to Brian Reynolds.

The trial court approved the receiver's final accounting and disbursement to Brian Reynolds. Bradley filed a notice of cash supersedeas, and the funds were deposited in a trust account pending this appeal.

3

Bradley appeals.

DISCUSSION

Bradley assigns three errors. First, he argues that his judgments are senior to Brian Reynolds's lien and should be paid first. Second, he argues that his liens are senior to Brian Reynolds's interest in a certain portion of the proceeds from the sale of the home which he claims are Leslie Reynolds's separate property. Last, he claims the receiver improperly calculated the payment due to Brian Reynolds.

In a dissolution proceeding, the court has "practically unlimited power" over property when exercised with reference to the rights of the parties and their children. Arneson v. Arneson, 38 Wn.2d 99, 102, 227 P.2d 1016 (1951). The dissolution court has authority to make disposition of the property and liabilities of the parties, whether community or separate. RCW 26.09.080. Where it appears that partition of property cannot be made equally, the court may equalize an unequal distribution of property by ordering a money award to one party through the "'time-honored doctrine of owelty.'" In re Sale of the Real Prop. of Hartley, 54 Wn. App. 434, 438, 774 P.2d 40 (1989) (quoting Von Herberg v. Von Herberg, 6 Wn.2d 100,121, 106 P.2d 737 (1940)); RCW 7.52.440. Owelty may take the form of a one-time payment, or may become a lien on property awarded to the other spouse. Id.

Here, the dissolution decree awarded Leslie Reynolds, as separate property, the family home, subject to a lien to Brian Reynolds of $342,115 bearing a six percent interest rate per year. The lien is an owelty lien. It was awarded to Brian Reynolds as his separate

4

property. As such, it is not subject to Bradley's judgment.[2] The judgment which Bradley seeks to enforce was entered against only Leslie Reynolds on June 24, 2008. It was not entered against Brian Reynolds. The parties had been living separate and apart since April 22, 2007. The marital community was defunct. Leslie had no authority to act on the behalf of the marital community to encumber community real property. RCW 26.16.030(3). The marital residential property was community property. The judgment is therefore a separate liability of Leslie. The trial court in the dissolution properly characterized it as a separate liability.

This is similar to the property division in Marriage of Wintermute, 70 Wn. App. 741, 744-45, 855 P.2d 1186 (1993). The court characterized the division in this manner:

> The decree of dissolution attempted to distribute the marital property equitably, yet preserve the family home for Florence and the children during their minority. Thus, the trial court awarded the home to Florence and a compensating sum of $12,000 to Leslie. This kind of equalization derives from the ancient doctrine of owelty, Hartley v. Liberty Park Assocs., 54 Wn. App. 434, 437, 774 P.2d 40(1989), and is authorized by statute, RCW 7.52.440. A judgment for owelty creates an equitable lien on the property in the nature of a vendor's lien. Adams v. Rowe, 39 Wn.2d 446, 236 P.2d 355 (1951); Hartley, supra.
> A vendor's lien affords the seller of real property a means of securing the unpaid portion of the purchase price. BLACK'S LAW DICTIONARY 1555 (6th rev. ed. 1990). When, as in this case, a particular piece of real property cannot be fairly apportioned, an equalizing monetary award can be made in lieu of partition. See Adams, 39 Wn.2d at 447[]; Von Herberg[, at] 121[]; Hartley, 54 Wn. App. at 438[]. An owelty lien to secure the debt may be created by agreement of the parties, or it may be decreed by the court as an equitable alternative to partition. 4 G. Thompson, Real Property, § 1827 (1979); Von Herberg, 6 Wn.2d at 121[]. The owelty lien is like a vendor's

---

[2]Bradley argues that having his rights as a third-party creditor determined by the dissolution proceeding violates his due process rights. Bradley's argument is unavailing. The dissolution court has the power to allocate liabilities between the parties and to place property outside the reach of creditors. Arneson, 38 Wn.2d at 101-02.

lien in that it attaches to a particular piece of real property to assure payment of a debt related to that property.

An owelty lien commences from the entry of judgment. Hartley, at 437[(]citing RCW 4.56.200[).]

Id.[3,4,5] (footnotes omitted). By attaching to a particular piece of real property to secure an equalizing award of money, an owelty lien is significantly more focused and limited in scope than a general judgment lien. See id. at 744-46.

_____

[3]RCW 7.52.440 provides, in part, as follows: When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, the court may adjudge compensation to be made by one party to another on account of the inequality of partition.

[4]Vendor's liens are referenced in the homestead statute. RCW 6.13.080(1). It has been held that a vendor's lien does not exist in Washington. State ex rel. Ritchie v. Douglas, 198 Wash. 564, 89 P.2d 227 (1939), overruled in part on other ground by First Nat. Bank of Everett v. Tiffany, 40 Wn.2d 193, 242 P.2d 169 (1952). However, the vendor's lien mentioned in the homestead statute is not the kind of lien which we have held does not exist, but is the very kind that is here sought to be enforced. Thompson v. Hunstad, 53 Wn.2d 87, 90, 330 P.2d 1007 (1958). We have recognized that a judgment based upon the purchase price of realty is in the nature of a vendor's lien, within the meaning of RCW 6.13.080, providing that homesteads are subject to execution on judgments obtained on debts secured by vendor's liens. Lenz v. Harding, 186 Wash. 642, 647, 59 P.2d 743 (1936); Lyon v. Herboth, 133 Wash. 15, 19, 233 P. 24 (1925). In the latter case, the vendor was permitted to execute upon the land, in spite of a prior declaration of homestead by the vendee, the court saying: "At the common law the mere fact of the sale seems to have given the vendor an equitable lien on the property for the purchase price. No recordation of it was necessary. It was a secret lien, and we held in the Smith [c]ase that such a lien was inconsistent with our recording acts. But the lien here sought to be enforced is not the secret equitable lien which was condemned. It is one by virtue of a judgment which respondents obtained for the purchase price. The vendor's lien mentioned in the homestead statute is not the kind of lien which we have held does not exist, but is the very kind that is here sought to be enforced." Herboth, 133 Wash. at 19 (citing Smith v. Allen, 18 Wash. 1, 50 P. 783 (1897)). Adams and Hartley describe an owelty lien as an equitable lien "in the nature of a vendor's lien." Adams, 39 Wn.2d at 449; Hartley, 54 Wn. App. at 438. Therefore, we liken the owelty lien in this case to a vendor's lien.

[5]RCW 4.56.200 was amended in 2012 to provide: "The lien of judgments upon the real estate of the judgment debtor shall commence as follows: . . . (2) Judgments of the

Leslie's separate interest in the former community residence is an after-acquired property interest for purposes of RCW 4.56.190. Bradley's claim is a general statutory lien claim based on a money judgment. As such, Bradley's lien attaches only to her non-exempt property, not her homestead exemption. Bradley argues his lien is first in time and first in right, because he recorded his judgment before Brian recorded his, and it attached the instant Leslie received the separate property interest. But, this argument is erroneous.

The decree of dissolution transformed community property interests into separate property interests as part of the partition of the assets of the marital community. See In re the Marriage of Little, 96 Wn.2d 183, 190, 634 P.2d 498 (1981). The owelty lien awarded to Brian attached to the real property. Leslie was awarded a separate property interest already encumbered by the owelty lien. Bradley's judgment lien could attach to only that already-encumbered separate property interest. The owelty lien attached

superior court for the county in which the real estate of the judgment debtor is situated, from the time of the filing by the county clerk upon the execution docket." LAWS OF 2012, ch. 133, § 1. The Final Bill Report explains the amendment was in response to a then recent case, Bank of America v. Treiger, which recognized certain judgments as perfected even though they did not contain the statutorily required judgment summary. S.B. REP. ON S.B. 6566, 62nd Leg. Sess., Reg. Sess. (Wash. 2012) (The actual name of the cited case is Bank of America, N.A. v. Owens, 173 Wn.2d 40, 54 266 P.3d 211 (2011)). A search for liens on real property most commonly occurs in one of two ways: through a search at a local county auditor's office in the county where the property is situated; or by the searching a court clerk's execution docket, a docket where judgment summaries are entered, as specified by state statute. See Fed. Intermediate Credit Bank of Spokane v. O/S Sablefish, 111 Wn.2d 219, 227, 758 P.2d 494 (1988) (purchasers have constructive notice upon entry by court clerk in the same county or by recording with county auditor). The bill report describes the amendment as clarifying "that the lien of judgments of real estate of the judgment debtor begin, for judgments of the superior court for the county in which the real estate is situated, from the time of the filing by the county clerk upon the execution docket in accordance with RCW 4.64.030." S.B. REP. ON S.B. 6566.

specifically to Leslie's real property and was perfected when the decree was filed and entered on the execution docket. RCW 4.56.200(2); CR 58(b).[6] It was unnecessary to record the decree with the county auditor to perfect the lien or establish its priority as to that specific property. RCW 4.56.200; See also Sablefish, 111 Wn.2d at 227. Therefore, the owelty lien is first in time and first in right with respect to Leslie's interest in the former family residence. And, because an owelty lien is in the nature of a vendor's lien, it must prevail against Leslie's declaration of homestead as well as the non-exempt portion of her property. Adams, 39 Wn.2d at 449; RCW 6.13.080.

Bradley argues RCW 6.13.090 requires a different result: "'A judgment against the owner of a homestead shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located.'" The statute addresses the effect of recording a statutory money judgment. Id. It attaches to real property only by virtue of recording. Id. It does not attach to the exempt portion of the homestead property. It attaches only to the excess value and only from the time of recording. Id. But, when a superior court awards an owelty lien on property within its county, though it is awarded for a sum of money, it attaches to the specific property when the decree or judgment is filed. See Wintermute, 70 Wn. App at 745. Recording is not required for perfection or priority. .

---

[6]CR 58(b) provides: "Judgments shall be deemed entered for all procedural purposes from the time of delivery to the clerk for filing, unless the judge earlier permits the judgment to be filed directly with the judge as authorized by rule 5(e)."

The homestead exemption is a very important protection for creditors. Yet, it is clear that an owelty lien may reach the otherwise exempt portion of the homestead property, while a general money judgment may not. RCW 6.13.080; <u>Wintermute</u>, 70 Wn. App. at 744-45. It would be anomalous to allow the owelty lien to take the debtor's protected property, but deny it access to the non-exempt portion of the property. Yet that is what Bradley's interpretation and argument would do. Doing so would undercut the utility of owelty liens. Rather than using the lien to keep a spouse and children in the family home, the court would be forced to order sale of the property. Bradley's argument has no merit.

Bradley argues that if the owelty lien is senior it attaches only to the partial value of the property represented by the initial principal amount due. He argues the balance of the property is subject to his judgment. He lacks authority to support this position and the argument lacks merit. The owelty lien attaches to the entire property. <u>See</u> <u>Wintermute</u>, 70 Wn. App at 745. Such liens secure forbearance on an amount of money due and generally will accrue interest. Bradley's theory would render interest on the lien unsecured and potentially uncollectable. This would undercut the purposes for which such liens were created in the first place.

We turn last to Bradley's assigned errors with the receiver's accounting. He claims that the receiver improperly calculated the amount due to Brian Reynolds by (1) incorrectly applying an interest rate of twelve percent rather than six percent, and (2) failing to subtract $25,000 from Brian Reynolds's claim which was improperly paid to Leslie Reynolds. He claims that after correcting these errors he would have been entitled

9

to $36,394. However, his own calculations are erroneous. Even crediting the $25,000 payment to Leslie against Brian's lien, applying only a 6 percent interest rate, and applying it to only the principal amount of the lien, the amount due Brian still exceeds the available funds to disburse.[7] His arguments do not result in a scenario in which the funds available for disbursement exceed the amount due Brian on his higher priority claim. Bradley was entitled to no funds.

If anything, the receiver undervalued Brian's interest in light of the judgment on the lien received on July 3, 2018 in the amount of $606,884 which bears interest at 12 percent per annum. The owelty lien accrued interest at 6 percent per annum, and by its terms was due in full if it remained unpaid as of January 1, 2012. Brian sued on the lien and secured a judgment for the outstanding principal, the lien interest through maturity, prejudgment interest at 12 percent to the date of judgment, together with costs and fees. Obtaining the judgment did not release nor alter the nature or the priority of the owelty lien. The judgment on the owelty lien was a proper measure of the lien for purposes of the creditor claim to the receiver.[8] The principal amount of the judgment alone would entitle Brian Reynolds to the entirety of the proceeds from this sale.

---

[7] Brian was paid $125,000 on the lien on July 12, 2019. Brian agrees that the $25,000 paid to Leslie under the agreement between the receiver, Brian, and Leslie is properly charged against his lien claim. Interest on $342,115 from October 1, 2008 until July 12, 2019 at 6 percent equals $221,691. Interest on $192,115 from July 12, 2019 until February 1, 2020 at 6 percent equals $6,442. The total remaining due to Brian solely on the owelty principal thus totaled $420,248. The funds in the receiver's possession totaled $366,447.

[8] The record does not indicate that the judgment was appealed. That judgment may not be collaterally attacked in this proceeding.

Any error in the receiver's calculation was harmless.  The trial court did not err in approving the final report and accounting.  Nonetheless, Bradley urges us to remand to the receiver to correct the calculations.  Remand would add expense but not change Brian's entitlement to the proceeds.  The only purpose it would appear to serve is to reduce the amount Brian would receive and to add further delay.  That may be Bradley's purpose, but not one we share.

We affirm.

_Appelwick, J._

WE CONCUR:

_Mann, C.J._                    _Verellen, J._