**CULLIGAN WATER CONDITIONING OF TRI–CITIES, INC., Successor in Interest to Culligan Water Conditioning of Kennewick, Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 76–2048.

United States Court of Appeals, Ninth Circuit.

Jan. 16, 1978.

Rehearing Denied April 7, 1978.

James J. Workland (argued), Spokane, Wash., for plaintiff-appellant.

Libero Marinelli, Jr. (argued), Washington, D. C., for defendant-appellee.

Before BARNES and SNEED, Circuit Judges, and JAMESON,* District Judge.

SNEED, Circuit Judge:

This is a suit for refund of income taxes paid by Culligan Water Conditioning of Tri-Cities, Inc. (Tri-Cities) as a transferee corporation assessed against Culligan Water Conditioning of Kennewick, Inc. (Kennewick), the transferor corporation. The district court, after a trial before it based on an agreed statement of facts set forth in the pretrial order as well as certain exhibits and depositions, dismissed Tri-Cities' suit.[1] We affirm.

The principal issue which this case presents is whether the transfer of assets to Kennewick by Casper Kramis was without recognition of gain or loss pursuant to section 351 of the Internal Revenue Code of 1954. If it was, Tri-Cities must lose; if it was not, Tri-Cities wins. Inasmuch as we have indicated that judgment against Tri-Cities was proper, it follows that we hold that the transfer required no recognition of gain or loss. We also find the procedural claim of Tri-Cities is without merit.

## I.

### Statutory Structure and Facts.

To understand the critical nature of the above issue, it is necessary to outline the relevant statutory structure and set forth the facts to which this structure must be applied. Tri-Cities acquired Kennewick's stock sometime in April 1965 shortly after Tri-Cities had been incorporated by Sam K. Grantham, his wife and his father-in-law. Kramis earlier had incorporated Kennewick and transferred to it the assets of a business Kramis previously had operated as a sole proprietorship. After this incorporation and transfer, Kramis sold the Kennewick stock to Tri-Cities. In June 1965 Tri-Cities liquidated Kennewick, its now wholly-owned subsidiary. In due course an income tax deficiency of $3,884.76 was asserted against Kennewick based on its failure to include in its last return gross income in the amount of $25,844 attributable to depreciation recapturable under section 1245 of the Internal Revenue Code of 1954.

Tri-Cities, as Kennewick's transferee, asserts that no depreciation was recapturable under section 1245 on the liquidation of Kennewick because the transfer by Kramis to Kennewick of the assets Tri-Cities ultimately acquired was taxable to Kramis. Unprotected by the nonrecognition provi-

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The case was heard by District Judge Charles L. Powell who prepared a memorandum decision dismissing Tri-Cities' suit. Prior to enter-
ing a judgment to that effect Judge Powell died. Thereafter, Tri-Cities moved for a new trial which was denied by Judge Marshall A. Neill who thereafter entered a judgment on the basis of Judge Powell's memorandum. The present appeal is from Judge Neill's judgment.

sion of section 351, all recapturable depreciation was taxable at that time, and Kennewick's basis in the assets it acquired from Kramis is properly their "cost" as determined by section 1012 rather than a "carryover" basis as determined by section 362. Because "cost" in this situation would mean that the fair market value of the assets was their basis, there would be no gain or loss by reason of section 1245 on Kennewick's liquidation.

No one disputes the correctness of Tri-Cities' analysis of the applicable sections of the Code, provided the transfer by Kramis to Kennewick was taxable and not, as the United States insists, a transaction governed by section 351. Therefore, we will not lengthen this opinion by demonstrating the manner in which sections 1245, 1012, 362, and other related sections such as 1001 and 332 functioned in this factual setting. Rather we will confine our attention to section 351, the application of which is the heart of this case.

## II.

### *The Application of Section 351.*

Section 351 was enacted in 1921 to exempt from taxation certain transactions which were basically "business adjustments," such as incorporation of a new business or the alteration of the form in which business was conducted by moving from one corporate shell to another. S.Rep.No.275, 67th Cong., 1st Sess., *reprinted in* 1939–1 C.B. (Part 2), 181, 188–89. In its present form, insofar as is relevant to this case, it

provides that gain or loss on the transfer of property to a corporation solely in exchange for the corporation's stock or securities is not recognized provided "immediately after the exchange such person or persons [the transferors of property] are in control (as defined in section 368(c)) of the corporation." Sec. 351(a), Internal Revenue Code of 1954.

■ Section 368(c), while defining "control" to mean ownership of "at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock," does not speak to the question of the effect on the existence of control of an obligation or understanding on the part of the transferor of assets to dispose of "control" shortly after incorporation. Resolution of this issue has been left to case law. Despite the fact that a relatively early case, *Portland Oil Co. v. Commissioner*, 109 F.2d 479 (1st Cir.), *cert. denied,* 310 U.S. 650, 60 S.Ct. 1100, 84 L.Ed. 1416 (1940), stated that momentary control, followed by immediate loss pursuant to a preconceived plan or agreement, would satisfy section 351, it is now well settled that momentary control is not enough if a plan to part with control existed at the time of the incorporation. *American Bantam Car v. Commissioner*, 11 T.C. 397 (1948), *aff'd per curiam*, 177 F.2d 513 (3d Cir. 1949), *cert. denied*, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1344 (1950), *Manhattan Builiding Co. v. Commissioner*, 27 T.C. 1032 (1957).[2] *See* Bittker & Eustice,

---

**2.** *American Bantam Car, supra*, considered a leading case on the question, focused on the existence of a contract which predated the incorporation so that "at the moment of the exchange the recipient of the stock did not own it, but held it subject to a binding contractual obligation to transfer a portion." *Id.* at 406. In *Manhattan Building Co., supra*, the Court, citing *American Bantam Car*, stated that the test was whether the exchange of stock for assets and later disposition of stock were "mutually interdependent transactions . . . so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series." 27 T.C. at 1042. Under this approach, the existence of a plan to incorporate and then dispose of control

would suffice to disprove the necessary control, regardless of whether the parties were legally bound to complete the second step. This latter formulation seems preferable. Formulated with the goal of excluding from section 351 reorganizations which involved a change in ownership, this exception to the "immediately after" requirement would itself be subject to manipulation by the parties if it required a binding obligation to dispose of control. Rather we should remain free to examine all the facts in order to determine whether there exists a plan or agreement to dispose of control regardless of the formalities with which the parties may choose to clothe their intentions.

*Federal Income Taxation of Corporations and Shareholders* ¶ 3.10 (1971).

■ Tri-Cities insists that Kramis had a plan to part with control at the time Kennewick was formed and the assets were transferred to it. It must be acknowledged that the facts are somewhat murky. A few things are clear, however. Kennewick was incorporated on October 4, 1964. The date the assets of the sole proprietorship were transferred to Kennewick can only definitely be fixed as occurring sometime between October 1, 1964 and mid-April 1965. Kramis, nonetheless, reported the transfer of assets in exchange for Kennewick stock on his 1964 income tax return. In January 1965 Kramis and Grantham began negotiating for the sale of the Kennewick business, and sometime between then and mid-April 1965 an agreement was reached. On April 14, 1965, a memorandum setting forth their agreement was executed. Kramis reported the gain on the sale of the Kennewick stock on his 1965 return.

Other evidence is more equivocal. There is some indication that Kramis was attending to certain "formalities" in connection with stock certificates of Kennewick as late as June 1965. In January 1965, Baker, whom Kramis consulted concerning the best way to sell the Kennewick business, wrote a letter indicating that the business should be sold as a sole proprietorship as well as expressing some uncertainty about whether the assets had been transferred to the corporation. In March 1965, Welsh, a lawyer consulted by Kramis, outlined the procedure actually followed by Kramis and Grantham in selling the Kennewick business. Kramis also incorporated two other sole proprietorships in October 1964.

On this evidence we cannot conclude that at the time the assets were transferred to Kennewick there existed an obligation or plan for Kramis to part with control of Kennewick. Tri-Cities has not carried its burden to establish by a preponderance of the evidence that such existed. *See Fulton*

*Container Co. v. United States*, 355 F.2d 319, 324 (9th Cir. 1966). At most Tri-Cities has shown only that some doubt exists. This is not enough to warrant a reversal of the district court's determination.

We are also persuaded that the formal requirements of incorporation under Washington law had been met as of October 5, 1964. Washington law provides that the issuance of a certificate of incorporation is conclusive evidence both that all conditions precedent to incorporation have been complied with and that the corporation has in fact been incorporated.[3] *Wash.Stat.* § 23A.12.040. Nor is there any evidence of the fraud or deception which would warrant disregarding the corporate entity under Washington law, *e.g. State v. Northwest Magnesite Co.*, 28 Wash.2d 1, 182 P.2d 643 (1947); *Von Herberg v. Von Herberg*, 6 Wash.2d 100, 106 P.2d 737 (1940); *Sommer v. Yakima Motor Coach Co.*, 174 Wash. 638, 26 P.2d 92 (1933).

Thus we conclude that the preponderance of the evidence indicates that the transfer of assets to Kennewick occurred in October 1964 and that the agreement to sell its stock to Grantham was reached after January 1965. Therefore, the transfer of assets to Kennewick is governed by section 351.

## III.

### *Procedural Claim.*

■ Tri-Cities further urges that a full refund is required because the Service followed improper procedures in collecting the tax. Assuming *arguendo* that Tri-Cities raised this issue in its refund claim and thus that this objection is properly before us, we find its contention without merit. Section 6901 provides the Service the power to use against a transferee the same summary collection procedures it may use against a transferor or any other delinquent taxpayer. But that section is not mandatory, as appellant suggests; rather, it adds to other methods available for collection. The Ser-

---

**3.** *Wash.Stat.* § 23A.12.030 provides that the Secretary of State shall issue this certificate after he has received the articles of incorpora-

tion and found that they conform to law. This appears to have been done; *see* exhibit 3.

vice remains free either to demand payment directly, as it did in this case, or to bring court action. Whether or not an agent told appellant to "pay up or we'll close you up," there is no evidence that the Service intended to bypass the procedural requirements for levying on the property of Tri-Cities or proceed in any improper manner against it.

AFFIRMED.